In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-4213

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

REBECCA S. DEMAREE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05CR00022-001—**David F. Hamilton**, *Judge*.

ARGUED JULY 11, 2006—DECIDED AUGUST 11, 2006

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The only question presented by this criminal appeal is whether, the federal sentencing guidelines having been made advisory by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), a change in the guidelines that expands the guidelines range for a crime is an ex post facto law and so cannot be applied to a defendant who committed his crime before the change.

The defendant in this case had pleaded guilty to wire fraud and tax offenses growing out of her embezzlement of almost $300,000. Under the 2000 version of the guidelines, in force when she committed these crimes, the sentencing

range was 18 to 24 months. But under the 2004 version, which among other changes relevant to her case reflects an increase in the punishment range for wire fraud to bring it into line with punishments for similar theft and fraud offenses, U.S.S.G., App. C, amendment 617 (Supp. 2002), the sentencing range is 27 to 33 months. The judge applied the 2004 guidelines, as he was required to do by the Sentencing Reform Act, 18 U.S.C. § 3553(a)(4)(A)(ii), and sentenced her to 30 months. But he added that if the 2000 guidelines were applicable to her case instead, he would have sentenced her to only 27 months (above the guidelines range, but not quite so far above as the 30-month sentence that he actually gave her). Demaree has appealed, and the government has confessed error, but we are not required to accept its confession. E.g., *United States v. Walker*, 447 F.3d 999, 1005-07 and n. 7 (7th Cir. 2006).

Article I, section 9, clause 3 of the Constitution forbids Congress to pass an ex post facto law, and Congress cannot be allowed to evade the prohibition by delegating penal authority to an agency. *Prater v. U.S. Parole Comm'n*, 802 F.2d 948, 954 (7th Cir. 1986) (en banc). But the purpose of the clause is to protect people against being punished for conduct that was not criminal when they engaged in it, or being punished more severely than their crime was punishable when committed, or being deprived of defenses that had been available then, or otherwise being blindsided by a change in law. *E.g., Collins v. Youngblood*, 497 U.S. 37, 42 (1990); *Miller v. Florida*, 482 U.S. 423, 429 (1987). The purpose is not to enable criminals to calculate with precision the punishments that might be imposed on them. See *Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977); *Prater v. U.S. Parole Comm'n, supra*, 802 F.2d at 954. That would be both remote from the concerns that animate the ex post facto clause and infeasible. The sentencing guidelines are so complex, and

even before they were demoted from mandatory to advisory status incorporated so many leeways for the exercise of judgment by the probation service and district judges, that no criminal could have guessed within three months what her sentence would be if she committed Demaree's offenses.

The Supreme Court, however, in *Miller v. Florida*, 482 U.S. 423 (1987), held that Florida's sentencing guidelines, which resembled the federal guidelines before *Booker* (that is, were mandatory), could not be applied retroactively. The courts of appeals, including our own, quickly fell into line and held that the principle of *Miller* applied to the federal sentencing guidelines as well: changes in the guidelines could not be applied to defendants who had committed their crimes before the changes if the changes would increase the sentence. *United States v. Seacott*, 15 F.3d 1380, 1384-86 (7th Cir. 1994); *United States v. Schnell*, 982 F.2d 216, 218 (7th Cir. 1992) (collecting cases).

The courts of appeals have continued to so rule since *Booker*, see, e.g., *United States v. Baretz*, 411 F.3d 867, 873-77 (7th Cir. 2005); *United States v. Cruzado-Laureano*, 404 F.3d 470, 488 (1st Cir. 2005); *United States v. Roberts*, 442 F.3d 128, 130 (2d Cir. 2006); *United States v. Iskander*, 407 F.3d 232, 242-43 (4th Cir. 2005); *United States v. Reasor*, 418 F.3d 466, 479 (5th Cir. 2005); *United States v. Harmon*, 409 F.3d 701, 706 (6th Cir. 2005); *United States v. Lopez-Solis*, 447 F.3d 1201, 1204-05 (9th Cir. 2006); *United States v. Foote*, 413 F.3d 1240, 1248-49 (10th Cir. 2005), but without considering the possible impact of that decision. So far as appears, the point had not been raised in any of these cases. That is not surprising. *Booker* is recent and most of the sentences reviewed in the cases would have been imposed before that decision; so the judge, on the authority of cases like *Seacott* and *Schnell*, would have applied the guidelines that

had been in force when the crime was committed. The Justice Department would not have challenged the use of the old guidelines, for it considers that use required to avoid violating the ex post facto clause.

Only two opinions address the bearing of *Booker* on the ex post facto issue. One is our opinion in *United States v. Roche*, 415 F.3d 614, 619 (7th Cir. 2005), where after noting that "*Booker* demoted the Guidelines from rules to advice," we said that "this removes the foundation of *Seacott* and similar decisions" that had applied *Miller* to the guidelines. The other opinion is to the same effect. *United States v. Barton*, 2006 WL 2164260, at *4 n. 4 (6th Cir. Aug. 2, 2006).

The test of an ex post facto law has been variously stated by the Supreme Court as whether it places the defendant at a disadvantage or substantial disadvantage compared to the law as it stood when he committed the crime of which he has been convicted, changed the definition of the crime or increased the maximum penalty for it, or imposed a significant risk of enhanced punishment. *Garner v. Jones*, 529 U.S. 244, 255-56 (2000); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 506 n. 3 (1995); *Weaver v. Graham*, 450 U.S. 24, 29 (1981) *Lindsey v. Washington*, 301 U.S. 397, 401-02 (1937) (per curiam). Any of these formulas, interpreted literally, would encompass a change in even voluntary sentencing guidelines, for official guidelines even if purely advisory are bound to influence judges' sentencing decisions. Most federal sentences, as the parties note, continue after *Booker* to be within the guidelines' sentencing ranges.

But it is a disservice to courts to interpret their verbal formulas without reference to context. The guidelines system in the *Miller* case required the judge to have "clear and convincing" reasons to depart from a guidelines sentencing range and a sentence within that range could not

be appealed. 482 U.S. at 432-33. The federal sentenc-
ing guidelines before *Booker* were similarly constraining.
If any regulation traceable to Congress that disadvan-
tages a criminal defendant is therefore an ex post facto law,
even if it is purely advisory, the constitutional prohibition
will be unmoored from both its purpose and the circum-
stances in which statutes and regulations have heretofore
been deemed to be ex post facto laws.

Suppose Congress passed a joint resolution urging federal
judges to give heavier sentences to white-collar criminals, or
a statute requiring victim impact statements in all cases. Or
suppose Congress appropriated more money for federal
prisons on the theory that prison crowding induces judges
to give shorter prison sentences. Or suppose the President
nominated and the Senate confirmed judges who had
pledged to get tough on criminals. Such measures would
tend to lead to longer sentences on average, but the effect on
the values animating the ex post facto clause would be
attenuated, and outweighed by the windfalls that would be
conferred on criminals lucky enough to have committed
their crimes before the measure was promulgated and by
the difficulty of gauging the effect on sentencing of an enact-
ment that does not establish a sentencing range from
which it is difficult to depart.

The parties respond that since a sentence within the
guidelines range is presumptively reasonable, e.g., *United
States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); see also
*United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006), and
therefore unlikely to be reversed on appeal, altering the
range presumptively alters the sentence. That is not true.
The judge is not required—or indeed permitted, *United
States v. Brown*, 450 F.3d 76, 81-82 (1st Cir. 2006)—to
"presume" that a sentence within the guidelines range is the
correct sentence and if he wants to depart give a reason why

it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). See, e.g., *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006). His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. *United States v. Walker*, 447 F.3d 999, 1008 (7th Cir. 2006); *United States v. Baker*, 445 F.3d 987, 991 (7th Cir. 2006); *United States v. Morales*, 445 F.3d 1081, 1086 (8th Cir. 2006). The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

The parties are forced to acknowledge, moreover, that a rule that a guidelines change cannot be applied retro-actively if it would be adverse to the defendant would have in the long run a purely semantic effect. Instead of purporting to apply the new guideline, the judge who wanted to give a sentence based on it would say that in picking a sentence consistent with section 3553(a) he had used the information embodied in the new guideline. For when the Sentencing Commission changes a guideline, it does so for a reason; and since it is a body expert in criminal punishments, its reason is entitled to the serious consider-ation of the sentencing judge. A judge who said he was persuaded by the insight that informed the new guideline to give a sentence within the range established by it could not be thought to be acting unreasonably. So to the other reasons for rejecting the ex post facto argument we add futility: whenever a law or regulation is advisory, the judge can always say not that he based his sentence on it but that he took the advice implicit in it. A judge is certainly entitled to take advice from the Sentencing Commission.

We conclude that the ex post facto clause should apply only to laws and regulations that bind rather than advise, a principle well established with reference to parole guidelines whose retroactive application is challenged under the ex post facto clause. *Garner v. Jones, supra*, 529 U.S. at 256; *California Dep't of Corrections v. Morales, supra*, 514 U.S. at 511-13; *Glascoe v. Bezy*, 421 F.3d 543, 547 (7th Cir. 2005); *Prater v. U.S. Parole Comm'n, supra*, 802 F.2d at 953-54; *Wallace v. Christensen*, 802 F.2d 1539, 1553-54 (9th Cir. 1986); *Dufresne v. Baer*, 744 F.2d 1543, 1549-50 (11th Cir. 1984); *Warren v. U.S. Parole Comm'n*, 659 F.2d 183, 195-96 (D.C. Cir. 1981); *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir. 1977). As for the confession of error that the government makes in its brief, the assistant U.S. attorney who argued the appeal acknowledged that the government is waging a rearguard action against *Booker* and wants the guidelines to bind as tightly as possible because it believes that judges are more likely to use their *Booker*-conferred discretion to sentence below than above the guidelines sentencing ranges. This produces the paradox that while the ex post facto clause is intended to protect criminal defendants, it is here invoked by the government in the hope that it will lead to longer sentences. It is not an attractive argument.

AFFIRMED.

A true Copy:

      Teste:

                                  _____
                                  *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*