# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 12, 2008      Decided December 5, 2008

No. 07-3107

UNITED STATES OF AMERICA,
APPELLEE

v.

PETER R. TURNER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00026-01)

*Arthur Luk*, appointed by the court, argued the cause for appellant. With him on the briefs was *Michele J. Woods*, appointed by the court.

*Edward P. Sullivan*, Attorney, U.S. Department of Justice, argued the cause for appellee. On the brief were *Daniel A. Petalas* and *Ann C. Brickley*, Attorneys. *Roy W. McLeese III* , Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

Dissenting Opinion by *Circuit Judge* TATEL.

RANDOLPH, *Circuit Judge:* The main issue in this appeal from a conviction, after a jury trial, is whether the sentence imposed on the defendant, Peter R. Turner, violated the Ex Post Facto Clause of the Constitution. U.S. CONST. art. I, § 9. Turner also raises the question whether the prosecution established his guilt beyond a reasonable doubt. The evidence, viewed in favor of the verdict, shows that there was sufficient evidence to support his conviction.

In 1998, while serving as a volunteer driver for the Department of Veterans Affairs Medical Center, Turner struck up a romantic relationship with Vester Mayo, a nurse at the Medical Center. Vester died in December 2000. She had taken out a life insurance policy through a federally-administered program. Her beneficiary designation form, contained in her personnel file, listed Turner and her mother, Lorenza Mayo, as co-beneficiaries. In January 2001, Turner filed a claim for his share of the life insurance benefits and later received a money market account valued at $20,562.90.

In preparing her claim, Lorenza examined her daughter's papers and concluded that Vester's beneficiary designation form contained forgeries. The dates on the form were inconsistent, Lorenza's name and address were misspelled, and Vester's social security number was incorrect. Lorenza reported this to federal authorities.

The ensuing investigation revealed that shortly after obtaining his life insurance payout, Turner wrote a $1,000 check from the proceeds to his friend, LaTanya Andrews. Andrews was a payroll technician at the Medical Center. She had worked in the human resources section, which housed employees' personnel files and was located in the same area as the payroll

section. A government agent interviewed her in November 2005. At first Andrews said she never received more than $10 from Turner. When the agent showed her the $1,000 check, she claimed that Turner wrote the check to prove to a car dealership that she had a checking account. When the agent told her this made no sense, Andrews said she borrowed the money from Turner to purchase a car and repaid him sometime before March 2001. Agents found nothing in Andrews's bank records to support her claim.

The grand jury charged Turner and Andrews with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and bribery, in violation of 18 U.S.C. § 201(b). Evidence a reasonable jury could credit showed that Vester's signature on the beneficiary form had been forged, that Andrews had easy access to Vester's personnel file containing the beneficiary form, and that Lorenza saw Turner forge her daughter's signature on two checks. The jury convicted both defendants on both counts. On Andrews's separate appeal, we affirmed her conviction. *United States v. Andrews*, 532 F.3d 900 (D.C. Cir. 2008). We now affirm Turner's.

A sentencing court, applying the Sentencing Guidelines, must "use the Guidelines Manual in effect on the date that the defendant is sentenced" unless the court determines that this would violate the Ex Post Facto Clause of the Constitution, U.S. CONST. art. I, § 9, in which case the court "shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S. SENTENCING GUIDELINES MANUAL §§ 1B1.11. The Ex Post Facto Clause bars the retroactive application of "enactments which . . . increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). When Turner received his share of the proceeds of Vester Mayo's life insurance policy in 2001, the Guidelines set the base offense level for conspiracy to defraud

the United States at 10. A 2004 amendment to the Guidelines increased the base offense level for his crime to 14.[1] This was the base level in the 2006 Guidelines the district court used when sentencing Turner in September 2007 to 33 months' imprisonment. As Turner sees it, the district court violated the Ex Post Facto Clause by applying the later edition of the Guidelines and thereby increasing his Guideline range from 21–27 months to 33–41 months. Unlike his co-defendant Andrews, *see Andrews*, 532 F.3d at 908, Turner preserved this issue by making a proper objection at sentencing.

The government counters that the conspiracy continued through 2005 when Andrews lied to the investigators in order to conceal her role and Turner's role in the fraud. Because the base offense level for Turner's conspiracy when he committed the offense (through 2005) was the same as the Guideline base offense level when he was sentenced (2007), the government says there is no *ex post facto* problem.

Turner's argument and the government's answer require us to determine the duration of the conspiracy between him and Andrews. Typically, questions about when a conspiracy ended arise in cases in which the defendant raises a statute of limitations defense, as in *Grunewald v. United States*, 360 U.S. 391 (1957), or in which the defendant objects that a co-conspirator's statement was hearsay because it was not made in

---

[1]The amendment imposed a two-point increase in the offense level for a defendant who is a "public official." *See* U.S. SENTENCING GUIDELINES MANUAL § 2C1.1 (2004). The government concedes that the district court erred when it determined that Turner was a public official under the amended Guidelines. Because we hold that the Ex Post Facto Clause required the court to use the 2000 Guidelines, the error will not be repeated on remand.

furtherance of an ongoing conspiracy, as in *Krulewitch v. United States*, 336 U.S. 440 (1949), and *Lutwak v. United States*, 344 U.S. 604 (1953). Even though we must determine the duration of a conspiracy in a different context – sentencing – cases such as those just cited are controlling.

The government says that the conspiracy continued through 2005 because the indictment alleged that one object of the conspiracy was "to conceal the conspiracy itself and the acts committed in furtherance thereof." The government's idea is that "the language of the indictment is controlling." Gov't Br. at 30. If this is supposed to mean that one need look only at the indictment to determine the duration of the conspiracy, the government is quite mistaken. The indictment in *Lutwak*, 344 U.S. at 617, charged a conspiracy to transport a woman across state lines for the purpose of prostitution, and – like the indictment in this case – alleged concealment of the crime as part of the conspiracy. Yet the Supreme Court held that the conspiracy did not continue after the transportation occurred. The indictment in *Grunewald* charged that "one of the terms of the illegal agreement was that continuing efforts would be made 'to avoid detection and prosecution by any governmental body.'" *United States v. Grunewald*, 233 F.2d 556, 565 (2d Cir. 1956). Yet the Supreme Court held that the conspirators' acts of concealment after the central object of the conspiracy had been accomplished did not extend the life of the conspiracy. *Grunewald*, 353 U.S. at 414; *see Forman v. United States*, 361 U.S. 416, 423–24 (1960), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). The portion of this court's opinion in *United States v. Hitt*, 249 F.3d 1010, 1015–16 (D.C. Cir. 2001), upon which the government relies, simply strings together citations and quotations from the cases. It does not, indeed could not, disagree with *Grunewald* or *Lutwak*.

But the government says it proved a conspiracy continuing after 2001, the year Turner reaped the results of his fraud and paid Andrews $1,000 for her help. The government's evidence consisted of Andrews's lying to investigators in 2005. Was this part of the conspiracy or had the conspiracy ended by then? The indictment did not allege, and the government did not prove, any *express* agreement between Turner and Andrews to conceal their offense after they had pocketed the proceeds. Yet one might reason that because a conspiracy cannot function except in secrecy, an agreement to avoid detection was implicit. The theory is plausible, but in *Krulewitch* and again in *Lutwak* and once again in *Grunewald* the Supreme Court rejected the theory "that in every conspiracy there is implicit an agreement as a part thereof for the conspirators to collaborate to conceal the conspiracy." *Lutwak*, 344 U.S. at 616. The government's position here is identical to the position it took in *Grunewald*: "a conspiracy to conceal is being implied from elements which will be present in virtually every conspiracy case, that is, secrecy plus overt acts of concealment." 353 U.S. at 404. If this were enough to keep the conspiracy alive after accomplishment of its central objects, the statute of limitations would never run until the conspirators' death, conviction, or confession. "Sanctioning the government's theory," the Court held in *Grunewald*, 353 U.S. at 402, "would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators."

Nothing we have written thus far is inconsistent with *Forman v. United States*, 361 U.S. at 423–24. The main charge in *Forman* was a conspiracy to evade income taxes. The Court seemed to agree – the opinion is a bit opaque on this point – that a "subsidiary conspiracy" to conceal the conspiracy would not extend the conspiracy's life. But the court added that the "essence of the conspiracy" to evade taxes was concealing

income and to be successful the concealing had to continue until the statute of limitations ran. *Id*. at 420, 424. Thus, a jury could have found that the conspiracy in *Forman* continued even after the tax returns were filed, but it could not base this finding on some subsidiary conspiracy to conceal the main conspiracy.[2] We admit that the *Forman* line is a bit elusive. *Grunewald* itself is not all that clear. The Court in *Grunewald* hinted – but did not hold – that the conspiracy there might have been extended if, rather than an implied agreement, there had been "an express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission." 353 U.S. at 404; *see Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1118 (D.C. Cir. 1991). The distinction between an "express" agreement to conceal and one that is inferred is not so easily justified – both would have the effect of indefinitely extending the limitations period and, as the Court recognized, such a subsidiary agreement is implicit, if not explicit, in every conspiracy. *See Grunewald*, 353 U.S. at 403-04; *Lutwak*, 344 U.S. at 616; *Krulewitch*, 336 U.S. at 444.

---

[2]In trying to squeeze this case into the *Forman* framework, the dissent asserts that the "essence" of the conspiracy here was concealing the "rightful" beneficiary's identity. That is an exceedingly odd formulation. One would have thought that the "essence" or main objective was getting hold of the insurance proceeds. Of course Turner and Andrews wanted to avoid detection, and of course, after Turner got the money, disclosure of the "rightful" beneficiary would have done him and Andrews in. But extending the life of a conspiracy on that basis is exactly what the Supreme Court refused to do in *Grunewald* and *Lutwak* and *Krulewitch*. All the dissent has managed in so many words is to restate the same theory those decisions reject.

However murky the distinction just mentioned, it is one that is of no consequence in this case. As we have discussed, the only possible way to find an agreement between Turner and Andrews to conceal their conspiracy is to infer its existence from Andrews's encounter with the agents in 2005. That puts the case squarely within the *Krulewitch-Lutwak-Grunewald* pattern and leads to the conclusion that the conspiracy did not continue after 2001. We therefore disagree with the district court's ruling that the conspiracy continued through January 2006.

This brings us to the question whether sentencing Turner under the newer Guidelines violated the Ex Post Facto Clause. The Guidelines in effect in 2001 yielded a sentencing range for Turner of 21 to 27 months' imprisonment. Under the later Guidelines the district court came up with a sentencing range of 33 to 41 months. These disparities render Turner's case analogous to *Miller v. Florida*, 482 U.S. 423, 424 (1987). In *Miller*, the defendant's "presumptive sentence" under the Florida guidelines in effect when he committed the offense was 3 ½ to 4 ½ years' imprisonment. By the time the court sentenced the defendant, revisions in the state's guidelines had increased his presumptive sentence to 5 ½ to 7 years' imprisonment. The trial court imposed a 7-year sentence. The Supreme Court held that the newer guidelines constituted an *ex post facto* law because the defendant had been "substantially disadvantaged." *Id.* at 432. It was no answer to say that the defendant might have received the same sentence under the old version of the guidelines. *Id.* at 432. While the Florida trial court was not bound to give the presumptive sentence, the court's discretion to give a different sentence was quite limited, and so as a practical matter the change in the guidelines increased the defendant's sentence. Quoting *Weaver v. Graham*, 450 U.S. 24, 36 (1981), the Court concluded that the new guidelines made "more onerous the punishment for crimes

committed before [their] enactment." *Miller*, 482 U.S. at 435. In the federal system, the courts of appeals relied on *Miller* to hold that applying post-offense Guideline revisions would violate the Ex Post Facto Clause if the revisions increased a defendant's sentencing range. *See United States v. Seacott*, 15 F.3d 1380, 1384–86 (7th Cir. 1994) (collecting cases).

Since *Miller*, the Supreme Court has rendered the federal Sentencing Guidelines advisory only. *United States v. Booker*, 543 U.S. 220 (2005). The Seventh Circuit believes *Booker* alters the *ex post facto* analysis. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006). The court of appeals concluded "that the ex post facto clause should apply only to laws and regulations that bind rather than advise, a principle well established with reference to parole guidelines whose retroactive application is challenged under the ex post facto clause." *Id*. at 795 (citing *Garner*, 529 U.S. at 251, 255–56; *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). The court gave two other reasons. One was that after *Booker* district judges have "unfettered" freedom to impose sentences outside the sentencing range and sentences within the range are not presumptively reasonable. *Demaree*, 459 F.3d at 795. The second was that if new Guidelines could not be used because of an *ex post facto* problem, district judges would get around the problem by saying that they were just taking into account the information that led to the new Guideline. *Id.*

As to *Demaree*'s second reason, we reject the idea that district judges will misrepresent the true basis for their actions. As to *Demaree*'s first reason, the Supreme Court has since confirmed that appellate courts may apply a presumption of reasonableness to a district court sentence calculated in conformity with the Guidelines. *United States v. Rita*, ___ U.S. ___, 127 S.Ct. 2456 (2007); *see United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006). As a result, judges are more

likely to sentence within the Guidelines in order to avoid the increased scrutiny that is likely to result from imposing a sentence outside the Guidelines. *See, e.g.*, Graham C. Mullen & J.P. Davis, *Mandatory Guidelines: The Oxymoronic State of Sentencing After* United States v. Booker, 41 U. Rich. L. Rev. 625 (2007). It is hardly surprising that most federal sentences fall within Guidelines ranges even after *Booker* – indeed, the actual impact of *Booker* on sentencing has been minor. *See* UNITED STATES SENTENCING COMMISSION, FINAL REPORT ON THE IMPACT OF UNITED STATES V. BOOKER ON FEDERAL SENTENCING 57 (2006); UNITED STATES SENTENCING COMMISSION, FINAL QUARTERLY DATA REPORT FISCAL YEAR 2007 1 (2008). Practically speaking, applicable Sentencing Guidelines provide a starting point or "anchor" for judges and are likely to influence the sentences judges impose. *See United States v. Settles*, 530 F.3d 920, 923–24 (D.C. Cir. 2008); Stephanos Bibas, *Plea Bargaining Outside the Shadow of Trial*, 117 Harv. L. Rev. 2463, 2515–19 (2004); *see also Demaree*, 459 F.3d at 792.

In addition, under the law of this circuit the existence of discretion does not foreclose an *ex post facto* claim, as *Demaree* supposed. "The controlling inquiry," we held in *Fletcher v. Reilly*, 433 F.3d 867, 876 (D.C. Cir. 2006), is how the parole authority "exercises discretion in practice" and whether "the exercises of discretion . . . actually 'create [ ] a significant risk of prolonging [an inmate's] incarceration'" (quoting *Garner*, 529 U.S. at 251). The proper approach is therefore to conduct an "as applied" constitutional analysis, *see Miller*, 482 U.S. at 435, not the sort of facial analysis conducted in *Demaree*. When the district court sentenced Turner to 33 months' imprisonment, it did not pull the number out of thin air. Turner's sentencing range under the Guidelines then in effect was 33–41 months, *see* U.S. SENTENCING GUIDELINES MANUAL, Sentencing Table, or so the court thought. It is obvious that the court decided to

sentence Turner at the low end of the 2006 Guideline sentencing range. Had the court used the 2000 Guidelines, Turner's sentencing range would have been 21–27 months, and it is likely that Turner's sentence would have been less than 33 months. Turner did not have to show definitively that he would have received a lesser sentence had the district court used the 2000 Guidelines. *See Miller*, 482 U.S. at 432. It is enough that using the 2006 Guidelines created a substantial risk that Turner's sentence was more severe, thus resulting in a violation of the Ex Post Facto Clause. *See Miller*, 482 U.S. at 433.

We therefore must remand for resentencing. We have considered and rejected Turner's other arguments, including his claim that he should have been sentenced to home confinement because of his medical condition. On remand the district court will of course consider Turner's medical condition as it exists at time of resentencing.

*So ordered.*

TATEL, *Circuit Judge*, dissenting in part: Although I share my colleagues' concerns about the implications of the government's argument, I cannot so easily dismiss *Forman v. United States*, 361 U.S. 416 (1960), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978).

In *Forman* the Supreme Court considered whether the applicable six-year statute of limitations barred the government from prosecuting a tax evasion conspiracy seven years after the filing of the last fraudulent tax return. The conspirators were two partners in a pinball machine business who robbed the machines at the most profitable locations, concealed the money from the location owners who were entitled to a cut, and omitted the "holdout income" from the partnership's books and tax returns. *Forman*, 361 U.S. at 418-19. At the same time, Forman's business partner, Seijas, kept diaries recording his share of the purloined profits but paid no individual income tax on them. *Id.* at 419. The indictment charged the partners with conspiracy to evade Seijas's individual income taxes and to provide false statements to the Treasury Department to conceal his true income tax liability. *Id.* at 417. A jury convicted the partners on both counts. *Id.*

On appeal the Ninth Circuit acknowledged record evidence that Forman participated in a conspiracy to evade Seijas's income taxes, that he made false statements concealing the evasion within the six years immediately prior to the indictment, and that concealment of the holdout income continued until Seijas turned his diaries over to federal agents just before the filing of the indictment. *Forman v. United States*, 259 F.2d 128, 133-34 (9th Cir. 1958). But finding that the case had been submitted to the jury on a theory foreclosed by *Grunewald v. United States*, namely that "a subsidiary conspiracy to conceal may . . . be implied from circumstantial evidence showing merely that the conspiracy was kept a secret," 353 U.S. 391, 402 (1957), it reversed the conviction.

*Forman*, 259 F.2d at 134-35. On rehearing, however, the Ninth Circuit agreed with the government that a permissible alternative theory could support a conviction, so it remanded for a new trial. *Forman v. United States*, 261 F.2d 181, 183 (9th Cir. 1959). Specifically, it concluded that the overt acts charged in the six-year period before the indictment "could well have been in furtherance of and during a conspiracy having as its objective not the concealment of the conspirators' conspiracy but tax evasion" itself. *Id.*

The Supreme Court affirmed, agreeing that the government could attempt to prove in a new trial that the conspiracy continued seven years after the last fraudulent tax return. *Forman*, 361 U.S. at 422-24. Critically for our purposes, the Court relied not on the existence of a "subsidiary conspiracy" between the partners in the ensuing years to conceal their already-completed crime, but rather on the possibility that the tax evasion conspiracy *itself* continued until that date. *Id.* Because the filing of fraudulent tax returns was "but the first step in the process of evasion," *id.* at 423-24, and because the partners would be unable to achieve their objective until the government could no longer collect taxes on the withheld income, *id.* at 424, the Court concluded that the indictment alleged and that evidence supported "one continuing conspiracy" of tax evasion, *id.* In other words, the Court held, the conspiracy could continue until seven years after the filing of the last fraudulent tax return because the acts of concealment furthered the conspiracy's very objective.

Indeed, even the *Grunewald* Court recognized that a conspiracy could extend in this manner, though it found that the government hadn't proceeded on such a theory in that case. There the Court stated that "acts of concealment done in furtherance of the main criminal objectives of the conspiracy" can prolong the conspiracy because "successful

accomplishment of the crime necessitates concealment"; by contrast, "acts of concealment done after these central objectives have been attained, for the purposes only of covering up after the crime," cannot prolong the conspiracy. *Id.* at 405. In *Grunewald* the Court suggested that this distinction may turn more on the scope of the conspiracy alleged and proven to the jury than on the particular acts of concealment. Thus, although the Court disagreed that acts concealing a conspiracy to obtain rulings that temporarily barred prosecution for tax evasion furthered the conspiracy beyond the date the defendants obtained the rulings, it emphasized that the very same acts *could* continue the conspiracy if its objective were to evade tax liability permanently rather than simply to obtain temporary no-prosecution rulings. *See id.* at 408-11. Indeed, the Court reversed the defendant's conviction only because it doubted that this second theory of the conspiracy's objectives had been submitted to the jury. *Id.* at 411.

Dismissing *Forman*'s relevance, this court concludes that the case before us must fall in the *Grunewald* line of cases because "the only possible way to find an agreement between Turner and Andrews to conceal their conspiracy is to infer its existence." Maj. Op. at 8. Perhaps the court means that proving a *subsidiary* conspiracy to conceal the principal criminal conspiracy after the latter realizes its objectives requires direct evidence of an agreement to conceal that is lacking here. If so, I agree, but *Forman*'s holding and *Grunewald*'s reasoning require that we answer a second question: whether the concealment could continue the principal conspiracy *itself* by furthering its very objectives. Sidestepping this question, my colleagues observe that the tax evasion conspiracy in *Forman* continued because the "'essence'" of tax evasion is concealment, Maj. Op. at 6-7 (quoting *Forman*, 361 U.S. at 420), without considering

whether the "essence" of the conspiracy here could amount to concealment as well. I believe the answer to that question is yes. Just as "the 'essence of [a] conspiracy' to evade taxes [is] concealing income," Maj. Op at 6-7 (quoting *Forman*, 361 U.S. at 420), the essence of the conspiracy here is concealing the identity of the rightful beneficiary of federal insurance proceeds.

I see no basis for distinguishing this case from *Forman*. As in *Forman*, where the government charged the defendants with conspiring to make false statements for the purpose of "concealing from the Treasury Department" the conspirators' true tax liability, 259 F.2d at 129-30, the government here charged Turner and Andrews with conspiring to "defraud the United States by impairing, impeding, and defeating the lawful functions and duties" of the agencies charged with implementing and overseeing the federal life insurance program, Indictment ¶ 7(a). At trial, the government produced evidence that these agencies have ongoing duties and investigatory authority to ensure that federal life insurance proceeds are properly distributed, as well as authority to recover wrongful distributions. The government also produced evidence that the agencies actually conducted such an investigation and that overt concealment occurred during 2005. In other words, the indictment charged and the government offered evidence that the original receipt of insurance proceeds was "but the first step in the process of" defrauding the United States government, *Forman*, 361 U.S. at 423-24, and that the ongoing concealment advanced this broader goal.

I share my colleagues' concern that, under the government's theory, the statute of limitations might never run "until the conspirators' death, conviction, or confession," Maj. Op. at 6—provided, of course, that the conspirators

engage in overt acts of concealment in the meantime. Indeed, just as in *Forman*, the government could charge virtually any conspiracy to commit a property crime as one that necessarily entails continuing concealment. *See, e.g.*, *Grunewald*, 353 U.S. at 405 ("[R]epainting a stolen car would be in furtherance of a conspiracy to steal [because] the successful accomplishment of the crime necessitates concealment."). But these are the consequences of the Supreme Court's holding in *Forman* and its reasoning in *Grunewald*. Because I feel bound by both, I reluctantly dissent.