In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1494

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDREW VELA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 1064 — **Milton I. Shadur**, *Judge.*

ARGUED JANUARY 10, 2014 — DECIDED JANUARY 29, 2014

Before FLAUM and EASTERBROOK, *Circuit Judges*, and
GRIESBACH, *District Judge*[*].

GRIESBACH, *District Judge.* This case presents the issue of
whether a defendant's decision to waive his right to appeal his
conviction and sentence as part of a plea agreement with the
government is rendered involuntary by a subsequent change

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

in the law. We hold that it is not and therefore dismiss the appeal.

Beginning in January 2010, Andrew Vela entered into a conspiracy to distribute cocaine in the Chicago area. Shortly thereafter, Vela rented a house in Nottingham Park for the purpose of setting up a marijuana growing operation. On June 30, 2010, law enforcement executed a search warrant at the grow house and recovered 101 marijuana plants. One of Vela's co-conspirators in the grow operation was located at the house with a loaded handgun.

Vela was charged on September 14, 2010, by criminal complaint with conspiracy to manufacture 100 or more marijuana plants and arrested at his home in Berwyn, Illinois the following day. At the time of his arrest, law enforcement recovered 112 grams of cocaine, together with a loaded Glock semi-automatic pistol, from Vela's bedroom dresser and approximately 390 grams of marijuana from a kitchen cabinet. A grand jury later returned two separate indictments against Vela. The first, based on the search of his home, charged him with possession with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). In the second indictment, based on the investigation surrounding the grow house, Vela was charged with conspiracy to manufacture and possess with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. § 846, and possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1).

On August 20, 2012, Vela entered guilty pleas to both counts of the first indictment pursuant to a written plea agreement with the government. In exchange for his pleas, the government agreed to dismiss the charges in the second indictment. Vela agreed, however, that his role in the marijuana grow house conspiracy would be considered relevant conduct for sentencing purposes.

The plea agreement included a discussion of the anticipated advisory sentencing range under the United States Sentencing Guidelines (Guidelines) and called for a two-level enhancement of the offense severity score for maintenance of premises for manufacturing controlled substances pursuant to § 2D1.1(b)(12) of the 2011 Guidelines Manual. The enhancement for maintaining a drug distribution premises did not become effective until November 1, 2010, some four months after the search of the grow house. USSG Appx C Supplement at 374, Amend 748. The parties nevertheless agreed, consistent with this court's decision in *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), that the more recent version of the Guidelines would apply.

The agreement also contained an appeal waiver in which Vela acknowledged his right to appeal his conviction and sentence and expressly agreed to waive such right in return for the concessions made by the government in the agreement. The waiver was not absolute, however. By its terms, it did not apply:

> to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation, nor does it prohibit defen-

dant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

After a thorough plea colloquy in compliance with Rule 11 of the Federal Rules of Criminal Procedure, the district court accepted Vela's plea, finding that Vela was competent to enter the plea and did so knowingly and voluntarily.

Vela was sentenced on February 8, 2013. The district court, as the parties had agreed and also consistent with this court's decision in *Demaree*, calculated the advisory sentencing range using the Guidelines in effect at the time of sentencing, rather than those in effect at the time of the offense, even though it resulted in a higher range. The court calculated the advisory range to be 97 to 121 months. Without the two-level enhancement for maintaining a premises for manufacturing a controlled substance, the sentence range would have been 78 to 97 months. Regardless of the Guidelines used, Vela faced a statutory mandatory minimum sentence of five years on the firearm offense that had to run consecutive to any other term of imprisonment. 18 U.S.C. § 3561. Ultimately, the district court sentenced Vela to 138 months: 78 months for possession with intent to distribute—a downward variance from the low-end advisory sentence of 97 months—and a consecutive 60-month sentence for possession of a firearm in furtherance of a drug trafficking crime. Vela filed a timely appeal.

Four months after sentencing, while Vela's appeal was still pending, the United States Supreme Court decided *Peugh v. United States*, — U.S. —, 133 S. Ct. 2072 (2013). In *Peugh*, the Court held that application of an amended sentencing Guidelines provision that increases a defendant's recommended sentence from what it would have been at the time of the offense violates the Ex Post Facto Clause. 133 S. Ct. at 2088. Based on *Peugh*, Vela requests that we vacate his sentence and remand his case for resentencing using the earlier Guidelines. The government argues Vela's appeal should be dismissed because he waived his right to appeal.

Vela offers two arguments why the appeal waiver should not be enforced. He primarily argues that his plea was not knowing and voluntary because he was unaware at the time he entered it that his plea agreement called for a violation of the Ex Post Facto Clause. Alternatively, Vela contends that his appeal falls within the exception to the appeal waiver that allows him to seek "a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission." Vela argues that *Peugh* represents such a change in the law, and as a result his appeal waiver is not a bar to his challenge to his sentence. We find neither argument convincing.

Vela's argument that his plea was not knowing or voluntary because he did not realize that he was agreeing to waive a constitutional right was rejected by the Supreme Court more than forty years ago in *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the defendant pleaded guilty to kidnaping in

violation of 18 U.S.C. § 1201(a), which at the time allowed imposition of the death penalty upon the recommendation of the jury. 397 U.S. at 743. The effect of placing such authority in the hands of the jury was to cause defendants so charged to either plead guilty or at least waive their right to a jury trial. Because the trial judge in his case made clear he would not try the case without a jury, Brady pleaded guilty to avoid the risk of the death penalty and was sentenced to 50 years imprisonment, later reduced to 30. This was in 1959. In 1968 the Supreme Court struck down the death penalty provision of the statute, holding that it "needlessly penalizes the assertion of a constitutional right." *United States v. Jackson*, 390 U.S. 570, 583 (1968). Based on *Jackson*, Brady sought relief under 28 U.S.C. § 2255, arguing that his plea was not voluntary, knowing, and intelligent because the unconstitutional portion of § 1201(a) coerced his plea and he was unaware at the time of his plea that the statute was unconstitutional. *Id.* at 744–45. The Court rejected Brady's arguments in language that is equally applicable here:

> A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action … . The fact that Brady did not anticipate *United States v. Jackson*, *supra*, does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it

later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Id.* at 757.

More recently, in *United States v. Broce* the Court reached a similar result in rejecting the challenge by a construction company and its owner to their convictions on pleas of guilty to two separate counts of conspiracy to rig bids and suppress competition in violation of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. § 1. 488 U.S. 563 (1989). Relying on a later case involving a different construction company where the court had held that the separate counts were merely smaller parts of an overarching conspiracy, the defendants each sought to set aside one of their convictions on the ground that conviction on both counts subjected them to double jeopardy. In rejecting the defendants' challenge, the Court noted that instead of entering their guilty pleas, the defendants had the opportunity to challenge the theory of the indictments and attempt to show the existence of only one conspiracy in a trial-type proceeding. *Id.* at 571. "They chose not to," the Court held, "and hence relinquished that entitlement." *Id.* And while the defendants may have made a strategic miscalculation, the Court noted that "[o]ur precedents demonstrate … that such grounds do not justify setting aside an otherwise valid guilty plea." *Id.*

Likewise, in *McMann v. Richardson*, 397 U.S. 759 (1970), the Court held that a counseled defendant may not make a

collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *Id.* at 770.

Stated simply, "[the Court's] decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty." *Broce*, 488 U.S. at 573. It therefore follows that the fact that Vela did not anticipate that the Supreme Court would overrule *Demaree* does not render his decision to plead guilty involuntary. While Vela may in hindsight regret his decision to waive his appeal rights as part of his plea agreement, that is not enough to permit withdrawal of his plea.

Vela's alternative argument fares no better. The plea agreement provided that the waiver did not "prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission." Vela argues that *Peugh* represents the kind of change in the law envisioned by the exception and the retroactivity of *Peugh* need not be examined because the case was decided while this appeal was still pending.

"Disputes over plea agreements are usefully viewed through the lens of contract law." *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005) (collecting cases). Vela's position

essentially requires us to ignore the clear and unambiguous language of the plea agreement. To satisfy the exception to the waiver, the change in law must have "been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission." While *Peugh* represents a change in the law, at least in this circuit, the Supreme Court did not make the change expressly retroactive in that case. In fact, *Peugh* concluded that "failing to calculate the correct Guidelines range constitutes procedural error," 133 S. Ct. 2083, the kind which are generally not applied retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004); *see also Hawkins v. United States*, 724 F.3d 915, 917 (7th Cir. 2013) (concluding that *Peugh* does not apply retroactively for purposes of collateral review for the same reasons). Thus, by its plain terms, the exception does not apply.

In sum, Vela voluntarily and knowingly entered into a plea agreement that included an appeal waiver, and his appeal does not fall within any of the bargained-for exceptions to that waiver. The waiver must therefore be enforced. Accordingly, Vela's appeal is **DISMISSED**.