In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3104

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDALL RAY FLETCHER, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:09-cr-00082-JVB-PRC-1 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED MAY 19, 2014 — DECIDED AUGUST 14, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Randall Ray Fletcher, Jr. pled guilty to a five-count indictment charging him with one count of producing, two counts of receiving, and two counts of possessing child pornography, all occurring over a seven-year period. The district court sentenced him to a thirty-year term of imprisonment, followed by a lifetime of supervised release. Because his crimes spanned a range of years during which the guidelines for child pornography offenses underwent signifi-

cant changes, his sentencing posed complex calculations and raised potential constitutional problems. We conclude that any errors the court made in calculating the guidelines sentence for Fletcher were harmless and we therefore affirm.

**I.**

In 2002, Fletcher was several years into a term of probation for conspiracy to commit murder when he became the subject of an investigation into child pornography. A July 4, 2002 search of his home resulted in the seizure of dozens of printed photographs of child pornography as well as more than two hundred compact discs, seventy-five floppy disks and a computer hard drive.[1] A warrant was obtained to search the electronic media, and the computer and discs were forwarded to the Indiana State Police for a forensic examination. But for reasons not apparent from the record, the Indiana State Police never conducted that examination. Instead, the misdemeanor state charges that were initially brought against Fletcher for possession of child pornography were dropped, and the computer and discs remained untouched in the custody of the State Police for several years.

In October 2008, the Indiana State Police referred the investigation to Immigration and Customs Enforcement ("ICE") Special Agents who are experts in investigating child exploitation offenses. In January 2009, those agents obtained from local authorities the printed photographs that had been

---

[1]  We will refer to the floppy disks and the compact discs collectively as "discs." The devices serve the same function of storing electronic data, including photographs and videos.

confiscated in 2002. They also secured a new search warrant for the electronic media that had been seized in 2002 and held by the Indiana State Police in the intervening years. Ultimately, that search uncovered thousands of photographs and videos of child pornography, including approximately 150 photographs that Fletcher took of his own then-seven-year-old daughter in 2002. The discovery of those images in 2009 led to a three-count federal indictment for producing, receiving and possessing child pornography. After Fletcher was arrested, law enforcement obtained additional search warrants for computers and electronic storage devices discovered in his 2009 living quarters within the home of his aunt and uncle. A search of those devices revealed that, between 2004 and 2009, Fletcher had amassed a new electronic collection of more than 400,000 pictures and videos depicting child pornography. A superseding indictment added two counts for receiving and possessing this new collection.

Both the timing and the nature of the charges are relevant to the sentencing issues posed, and so we briefly summarize the five-count indictment here. Count I alleged that, on or about February 28, 2002, Fletcher induced his daughter (referred to in the pleadings and briefs as "MM") to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, in violation of 18 U.S.C. §§ 2251(a) and 2. Count II charged Fletcher with receiving child pornography between February 28 and July 4, 2002, in violation of 18 U.S.C. §§ 2252(a)(2) and 2. Count III charged possession of child pornography between February 28 and July 4, 2002, in violation of 18 U.S.C. §§ 2252(a)(4) and (2). Among the materials charged in Count III were the pictures of MM, as well as

thousands of photographs and videos of other children. Count II did not include any pictures of MM. Counts IV and V addressed only the materials seized in 2009. In particular, Count IV charged Fletcher with receiving child pornography between November 8, 2004 and July 3, 2006, in violation of 18 U.S.C. §§ 2252(a)(2) and 2. Count V charged him with possession of child pornography between November 8, 2004 and May 1, 2009, in violation of 18 U.S.C. §§ 2252(a)(4) and 2. Neither of those last two counts included any photographs of MM.

Approximately one week prior to the scheduled trial date, Fletcher pled guilty to all five counts without a plea agreement. The difficulties of calculating the correct guidelines range for conduct occurring over a lengthy time line that encompassed significant changes to the guidelines resulted in three addenda to the Presentence Investigation Report ("PSR"). Over Fletcher's objections, the court applied the 2011 guidelines to all of the conduct charged. For Count I, the court determined that Fletcher's base offense level was 32 under section 2G2.1 of the guidelines. Adding enhancements for the age of the victims, the sadistic nature of the pictures, the fact that Fletcher was a parent of the child portrayed, and obstruction of justice, the resulting offense level was 44. The court then grouped counts II through V under section 3D1.2(d), and determined the base offense level to be 22.[2] Applying enhancements for the age of the victims, the sadistic nature of the materials, a pattern

---

[2] Fletcher did not object on appeal to the district court's decision to group Counts II through V. We will therefore assume that these counts were properly grouped when assessing Fletcher's main argument on appeal.

of activity involving the sexual exploitation of a minor (because of the possession of pictures of MM as charged in Count III), the use of a computer and the large number of images, the court calculated a preliminary offense level of 40. The court then applied the cross reference found in guideline 2G2.2(c) and re-calculated the preliminary offense level to be 42. Because that exceeded the original preliminary offense level for Counts II through V, the court used the latter figure and added an adjustment for obstruction of justice, resulting in a total offense level of 44, the same as for Count I. Two levels were then added under the multi-count adjustment, resulting in a total offense level of 46. The court then reduced the final offense level to 43, the maximum allowed under the guidelines. *See* U.S.S.G. Ch. 5, Pt. A, Application Note 2. Combined with Fletcher's criminal history category of IV, the guidelines range was life imprisonment. This exceeded the statutory maximum for the various offenses and so the court, after considering the factors listed in section 3553(a), sentenced Fletcher to 360 months of imprisonment. That sentence consisted of 240 months on Count I; 120 months on Count IV to be served consecutively to the sentence for Count I; 120 months on Count II; sixty months on Count III; and 120 months on Count V, with the sentences for Counts II, III and V to be served concurrently with the sentences for Counts I and IV. Fletcher appeals his sentence.

## II.

On appeal, Fletcher argues that the district court violated the *ex post facto* clause when it employed the 2011 version of the guidelines for criminal acts that took place in 2002 and 2009, time periods when the guidelines were less onerous than those

in effect in 2011.[3] We review constitutional challenges to a sentence *de novo*. *United States v. Brucker*, 646 F.3d 1012, 1016 (7th Cir. 2011). Our review of sentencing decisions generally is limited to whether they are reasonable, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). We first must ensure that the district court committed no significant procedural error, including, among other things, incorrectly calculating the guidelines range, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51. We review the district court's interpretation of the sentencing guidelines *de novo*, *United States v. Veazey*, 491 F.3d 700, 706 (7th Cir. 2007), and findings of fact for clear error. *United States v. Knox*, 624 F.3d 865, 870 (7th Cir. 2010). Sentences that are within the properly calculated guidelines range are entitled to a rebuttable presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). If the district court erred in sentencing Fletcher, we will apply the doctrine of harmless error in determining whether resentencing is necessary. *United States v. Olson*, 450 F.3d 655, 683 (7th Cir. 2006). An error related to the validity of a defendant's sentence is harmless only if it did not affect the district court's choice of sentence. *Olson*, 450 F.3d at 683; *United States v. Schlifer*, 403 F.3d 849, 854 (7th Cir. 2005).

---

[3]  The 2001 version of the guidelines was in effect at the time Fletcher committed the crimes charged in the first three counts of the indictment. The 2008 guidelines were in effect when Fletcher committed Count V. The 2011 guidelines are the same as the 2008 guidelines for all relevant purposes in this appeal.

All versions of the guidelines relevant to this appeal provide that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). However, if "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). The guidelines also require courts to apply the Guidelines Manual in effect on a particular date in its entirety. U.S.S.G. § 1B1.11(b)(2). Finally, "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3). This last provision is often referred to as the "one book rule."

Fletcher was sentenced in August 2012, and the November 1, 2011 guidelines were in effect at that time. Under section 1B1.11(a), the 2011 guidelines would therefore be applicable unless the use of that version would violate the *ex post facto* clause. Fletcher contends that the use of the 2011 guidelines did in fact violate the *ex post facto* clause because that version was considerably more onerous than the 2001 book in effect at the time he committed the acts charged in Counts I, II and III. The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 resulted in significant amendments to the child pornography guidelines on November 1, 2004. *See* Pub. L. No. 108-21, 117 Stat. 650 (hereafter the "PROTECT Act"); U.S.S.G. Manual Supplement to Appendix C, Vol. III, Amendment 664, at 58–63 (Nov. 1, 2009) (describing

amendments to the guidelines made in accordance with the PROTECT Act). Among other changes, the base offense level under section 2G2.1 rose from 27 to 32, and the base offense level under section 2G2.2 increased from 17 to 22.[4] Fletcher is thus correct that, at least as applied to his 2002 conduct, the 2011 guidelines were harsher than those in effect at the time he committed the acts comprising the first three counts of conviction.

When the district court used the 2011 guidelines to sentence Fletcher, it relied on our then-binding opinion in *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), in concluding that the use of the more recent and more onerous guidelines did not violate the *ex post facto* clause. In *Demaree*, we reasoned that application of the harsher version of the guidelines in effect at the time of sentencing rather than the version in effect at the time the offense was committed posed no *ex post facto* problem because of the advisory nature of the guidelines. 459 F.3d at 795. After the district court sentenced Fletcher, the Supreme Court rejected our reasoning in *Demaree*. *See Peugh v. United States*, 133 S. Ct. 2072 (2013). *See also United States v. Vallone*, 752 F.3d 690, 693 (7th Cir. 2014). In *Peugh*, the Court concluded that, even though the guidelines are advisory, courts are required to use the correctly calculated range as the starting point in the sentencing process and as a reference point in determining the final sentence. *Peugh*, 133 S. Ct. at 2080–84; *Vallone*, 752 F.3d at 693–94. In short:

---

[4]  The base offense level in section 2G2.2 actually increased from a single level of 17 to either 18 or 22 depending on the statute of conviction. In Fletcher's case, the guideline increased from 17 to 22.

> The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing. A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation.

*Peugh*, 133 S. Ct. at 2084. *See also Vallone*, 752 F.3d at 694. Fletcher contends that we must vacate and remand his sentence for reconsideration in light of *Peugh*.

We conclude, though, that *Peugh* does not require a remand in this instance. First, the court did not err in using the later guidelines to calculate the sentence for the grouped counts (Counts II through V) that straddled the date of the change in the guidelines. And second, any error in calculating the range for Count I was, in the end, harmless.

We faced a similar issue in *United States v. Vivit*, 214 F.3d 908 (7th Cir. 2000), a case that was decided at a time when the application of the guidelines was considered mandatory rather than advisory. Vivit challenged the application of the one book rule to his sentence for sixteen counts of mail fraud. Vivit's conduct straddled two versions of the guidelines, and the latter version added a two-level enhancement for the use of a minor in the commission of the offense. Vivit employed a minor in fraud counts that were completed before that guideline was adopted but did not use a minor after the enactment of the enhancement. The district court grouped all of Vivit's offenses under guideline section 3D1.2, which directs the court to group together for sentencing purposes all counts involving substantially the same harm. The court then applied the two-level

enhancement for use of a minor. We noted that, to "violate the *ex post facto* clause, the application of amended Guidelines must disadvantage the defendant without providing the defendant with prior notice." *Vivit*, 214 F.3d at 919. We then held that the grouping rules, together with the one book rule, provided Vivit with adequate notice that the newer version of the guidelines would be applied to him if he elected to continue his criminal activity after the guidelines were amended. 214 F.3d at 919. Therefore, imposition of the later, harsher version of the guidelines posed no *ex post facto* problem.

We recently noted that the reasoning of *Vivit* survives *Peugh*. *See Vallone*, 752 F.3d at 698–99; *United States v. Hallahan*, 2014 WL 3029705, *14, — F.3d — (7th Cir. July 7, 2014). *See also United States v. Pagan-Ferrer*, 736 F.3d 573, 598–99 (1st Cir.), *cert. denied*, 134 S. Ct. 2839 (2013). That is, the application of the newer, harsher version of the guidelines to grouped offenses that straddle an amendment poses no *ex post facto* problem because the grouping guidelines together with the one book rule provide adequate notice to defendants that they will face the harsher version of the guidelines if they choose to continue a course of conduct after the guidelines are amended. In Fletcher's case, the district court grouped Counts II through V under section 3D1.2(d). Counts II and III were completed in 2002, before the Sentencing Commission implemented significant changes to the child pornography guidelines in 2004. Counts IV and V were completed in 2006 and 2009, respectively, after the 2004 amendments. Fletcher has not challenged

that grouping on appeal.[5] Under section 1B1.11(b)(3), the later version of the guidelines applies to the entire group. *Vivit* and *Vallone* therefore control the result for Counts II through V, and the court committed no error in using the later version of the guidelines to calculate Fletcher's sentence for those counts.

Count I, however, was not grouped, and so the grouping rules could not be said to have provided notice to Fletcher that he would be subject to the harsher version of the guidelines in effect at the time of sentencing. The government concedes as much, acknowledging in its brief that "*Vivit* does not answer the question of how to treat Count I, which does not group with the other counts." Brief for the United States, at 18. The government nevertheless contends that any error in applying the newer guidelines to Count I was harmless. The government urges us to find that the offense level of 44 for Counts II through V is, for all relevant purposes, the same as the level 46 found by the district court after adding two levels for Count I under the section 3D1.4 multi-count adjustment because the guidelines are capped at level 43. Including or excluding those two levels for Count I from the final calculation, the government asserts, yields the same guidelines range of life and so any error on Count I is harmless.

---

[5] Fletcher also asserts that the five-level enhancement for sexual exploitation of a minor should not apply to the calculation of the guidelines range for Counts II through V because the conduct that gave rise to that adjustment occurred in 2002. But Fletcher did not challenge the grouping of these counts and *Vivit* and *Vallone* demonstrate that application of the adjustment was proper.

   With a few adjustments to this analysis, we conclude that
if the district court made any error in calculating the range for
Count I, it was harmless. First, we note that the final guidelines
range was not, in fact, life. As the district court recognized, the
statutory maximum for Count I is twenty years; for Count II,
fifteen years; for Count III, five years; for Count IV, twenty
years; and for Count V, ten years. "Where the statutorily
authorized maximum sentence is less than the minimum of the
applicable guideline range, the statutorily authorized maxi-
mum sentence shall be the guideline sentence." U.S.S.G.
§ 5G1.1. For Count I, then, the range of "life" was effectively
reduced to twenty years, the statutory maximum. For Counts
II through V, the range of "life" was reduced to the sum of the
statutory maximum sentences as if they were applied consecu-
tively, in this instance, fifty years (fifteen plus five plus twenty
plus ten). *See United States v. Boroczk*, 705 F.3d 616, 622 (7th Cir.
2013), *cert. denied*, 134 S. Ct. 288 (2014) (explaining that a
guidelines range of life defaults under section 5G1.1(a) to the
sum of the statutory maximum sentences for each count).
Because the range for each group was restricted by the statu-
tory maximum, the government's contention that the range
was life no matter whether the court included Count I falls flat.
Second, the court ordered that the sentence for Count IV be
served consecutively to the sentence for Count I, and that the
sentences for the remaining counts be served concurrently with
those counts. Thus, if the court erred in calculating the sentenc-
ing range for Count I, the government's theory alone could not

assure us that the error had no effect on the court's selection of a sentence.[6]

But Fletcher himself supplies the answer as to whether any error on Count I affected the court's selection of a sentence. By Fletcher's calculations using the earlier version of the guidelines, the total offense level "as it pertains to Count I" should have been 37. With a criminal history category of IV, the earlier version of the guidelines would have yielded a sentencing range of 292-365 months. *See* Brief of Defendant-Appellant, at 13-14. As was the case with the district court's calculation, the low end of this range exceeded the statutory maximum for Count I and so, under section 5G1.1, "the statutorily authorized maximum sentence shall be the guidelines sentence." That would bring the range for Count I down to 240 months, the same range the district court calculated under the 2011 guidelines. Because the court was constrained by the statutory maximum under either version of the guidelines, any error in calculating the range for Count I could not have affected the district court's choice of a sentence and thus any possible error

---

[6] The government also urges us to find that, in the case of non-grouped offenses, section 1B1.11(c) in combination with Federal Rule of Criminal Procedure 8(a) provide defendants with sufficient notice to avoid an *ex post facto* violation. Because we conclude that any possible error by the district court was harmless, we need not reach this issue. We note, though, that the rule for joinder of offenses is a thin reed on which to rest the notice that the *ex post facto* clause requires, and that such an analysis may result in unintended side-effects as defendants seek to sever counts in order to avoid unpredictable sentencing consequences.

was harmless. *Olson*, 450 F.3d at 683; *Schlifer*, 403 F.3d at 854. The judgment is therefore

AFFIRMED.