PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTONIO BERNARD DEAN,

*Defendant-Appellant.*

No. 08-4439

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge.
(3:06-cr-00443-RJC-1)

Argued: March 25, 2010

Decided: May 5, 2010

Before WILKINSON and MOTZ, Circuit Judges,
and Joseph R. GOODWIN, Chief United States District
Judge for the Southern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Motz and Judge Goodwin joined.

## COUNSEL

**ARGUED**: Ross Hall Richardson, FEDERAL DEFENDERS
OF WESTERN NORTH CAROLINA, INC., Charlotte, North

Carolina, for Appellant. Adam Christopher Morris, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

Antonio Bernard Dean challenges the imposition of a "career offender" sentence enhancement under the U.S. Sentencing Guidelines following his conviction on a drug possession charge. Dean was eligible for that enhancement only if the two predicate offenses upon which it was based were "separated by an intervening arrest." *See* U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (2007). Dean argues that in determining that an intervening arrest had occurred, the district court erred by relying on materials prohibited by the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005).

In *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, the Supreme Court intended two things. First, it sought to eliminate conflict between the Sixth Amendment jury trial right and the Sentencing Guidelines scheme, a task it accomplished by rendering the once-mandatory Guidelines advisory. Second, it endeavored to accord a greater, though not a complete, measure of latitude to district courts at sentencing, both in their ability to find facts and to determine the most appropriate sentence. Dean's contention runs afoul of both these principles and would require us to backtrack significantly on the teachings of *Booker* and its progeny.

I.

In December 2006, Dean was charged with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. The offense carries a maximum sentence of twenty years. 21 U.S.C. § 841(b)(1)(C). He pled guilty without a plea agreement. The Pre-Sentence Investigation Report ("PSR") calculated an advisory Sentencing Guidelines range of 151 to 188 months' imprisonment. This range reflected the conclusion that Dean qualified as a "career offender" within the meaning of the Guidelines, which increased both his offense level and his criminal history classification. *See* USSG § 4B1.1(b). Under the Guidelines, Dean was eligible for this enhancement if he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* The PSR concluded that Dean was a career offender since his record showed that he had pled guilty to two cocaine felonies in North Carolina state court.

Dean, however, objected. The two predicate offenses cited by the PSR had been sentenced the same day, and the Guidelines provide that in such a situation, they are to be counted as only a single offense unless it can be shown that the sentences "were imposed for offenses that were separated by an intervening arrest." USSG § 4A1.2(a)(2); *see also* USSG § 4B1.2(c)(2). An intervening arrest means that "the defendant is arrested for the first offense prior to committing the second offense." USSG § 4A1.2(a)(2). Dean objected to his career offender classification on these grounds, arguing that there was no intervening arrest separating the predicate offenses cited by the PSR. Treating the two sentences as a single conviction would have produced a Guidelines range of thirty to thirty-seven months' imprisonment.

The issue was taken up at Dean's sentencing hearing in April 2008. The government claimed that Dean was arrested for the first offense on April 1, 1999, and that he committed the second offense on January 26, 2000. In support of these

propositions, it produced copies of two bond orders from state magistrate judges, as well as certain records from the state court clerk's office. The docket number listed on each of the respective magistrate's orders corresponded with the docket numbers associated with Dean's two prior convictions. The first order was dated April 2, 1999, and indicated that Dean had committed and been arrested for a drug felony the day before, on April 1. The second order was issued January 27, 2000, and stated that Dean had committed and been arrested for a drug felony the day before, on January 26.

Over Dean's continued objection, the district court concluded on the basis of the government's evidence that an intervening arrest had taken place. The court then sentenced Dean to the Guidelines minimum of 151 months' imprisonment. This appeal followed.

## II.

Under *Shepard v. United States*, 544 U.S. 13 (2005), a sentencing court attempting to determine the character of a prior offense to which a defendant pled guilty generally may look only to certain documents: "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16. *Shepard* was founded on two rationales: concern that a wider inquiry would violate the Sixth Amendment right to trial by jury and a desire to avoid elaborate proceedings in which an earlier trial might be picked apart. *Id.* at 23-25.

Dean argues that the district court erred by relying on materials other than the sort *Shepard* allows to establish that an intervening arrest had occurred. For purposes of this appeal, we assume that the magistrate's orders and clerk's office records that Dean seeks to exclude would not qualify for admission under *Shepard*, since the government has not

argued otherwise. Nonetheless, Dean's claim is mistaken for several reasons.

## A.

The Sixth Amendment right to trial by jury applies to the finding of "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." *United States v. Booker*, 543 U.S. 220, 231 (2005) (citation omitted). There is an exception to this principle, however. Under the doctrine originating in *Almendarez–Torres v. United States*, 523 U.S. 224, 239-47 (1998), there is no right to have a jury determine the existence of the "fact of a prior conviction," nor of any fact "necessarily" established for the conviction to have been valid. *See Booker*, 543 U.S. at 231; *Shepard*, 544 U.S. at 24-25.

The reason for this exception is that a prior conviction and any subsidiary conclusions it necessarily entailed are more like legal facts than real-world ones. As we have explained, decisions like "*Booker*[ ] and *Shepard* do not, of course, transmogrify what have always been questions of law into questions of fact." *United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005). And the process of putting two and two together—of reasoning that a jury that convicted a defendant of a given offense necessarily found that the defendant engaged in conduct that is an essential element of the offense —is a matter of legal reasoning, not factual inference. *See Shepard*, 544 U.S. at 25; *Thompson*, 421 F.3d at 282-83.

But while facts established through a prior conviction are excepted from the Sixth Amendment jury trial right, respect for the Sixth Amendment requires that this exception be kept within its proper bounds. That was one of the lessons of *Shepard*, which noted that in some cases the meaning of a prior conviction may be "debatable." *Shepard*, 544 U.S. at 25. *Shepard* therefore held that courts relying on the *Almendarez–Torres* exception could consider as evidence only offi-

cial documents establishing the matter with "the conclusive significance of a prior judicial record." *Id.*

*Shepard*'s Sixth Amendment holding was meant to ensure that judges do not "smuggle in contraband facts—those that are reserved for juries—under the mantle" of the *Almendarez-Torres* exception. *Thompson*, 421 F.3d at 282. It should be obvious that in contexts where there is no Sixth Amendment right to trial by jury, there is no need to rely on *Shepard*'s technique for ensuring that the *Almendarez-Torres* exception to the jury-trial right genuinely applies. In arguing that the intervening arrest determination violated the Sixth Amendment, however, Dean runs headlong into this principle.

In *Booker*, the Supreme Court held that the then-mandatory Sentencing Guidelines violated the Sixth Amendment since they allowed a defendant's sentence to be increased beyond the maximum allowable by law if the sentencing judge made certain factual findings. *Booker*, 543 U.S. at 243-44. The Court's solution was to convert the Guidelines from binding law to an advisory document. *Id.* at 246. Once the Guidelines were stripped of legal force, the Sixth Amendment no longer pertained to them—that, after all, was the reason for the stripping. As we have explained:

> Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict. Indeed, "many individual Guidelines apply higher sentences in the presence of special facts" and "[i]n many cases, the sentencing judge, not the jury, will determine the existence of those facts." That "does not violate the Sixth Amendment," however, because "[a]s far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence in the absence of the special facts." The point is thus

> that the Guidelines must be advisory, not that judges may find no facts.

*United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 352 (2007)).

The Guidelines' career offender provisions are no less advisory than any other portion. *See United States v. Moreland*, 437 F.3d 424, 436 (4th Cir. 2006); *see also Gall v. United States*, 552 U.S. 38, 49 (2007) (noting that "the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions."); *Kimbrough v. United States*, 552 U.S. 85, 101-08 (2007). The maximum sentence to which Dean could lawfully have been sentenced was twenty years, regardless of whether or not he was a career offender. *See* 21 U.S.C. § 841(b)(1)(C). That being so, *Shepard*'s Sixth Amendment-based limitations on the kind of sources a sentencing judge may consult were not implicated by the enhancement in Dean's advisory Guidelines sentence, which, we note, resulted in a recommended range well below the statutory maximum.

Dean protests that *Shepard* has previously been applied in advisory Guidelines cases. *E.g., United States v. Maroquin-Bran*, 587 F.3d 214 (4th Cir. 2009); *United States v. Farrior*, 535 F.3d 210 (4th Cir. 2008). But those cases do not address the issue of whether *Shepard*'s Sixth Amendment limitations apply to advisory Guidelines sentences. Because those cases applied *Shepard*'s statutory rule, and because Dean has disavowed any challenge regarding *Shepard*'s statutory rule, the cases do not assist Dean in any way. As to the Sixth Amendment point, the language of *Rita* and the logic of *Booker* is inescapable: because the Sixth Amendment does not apply to the process of calculating an advisory sentence under the Guidelines, *Shepard*'s Sixth Amendment-based evidentiary restrictions do not apply to that process either.

B.

Dean's argument also founders on a second principle enunciated in *Rita* and *Gall*, the Supreme Court's major sentencing decisions in the wake of *Booker*. Those cases were clear not only that the Sentencing Guidelines have been purged of any Sixth Amendment defect, but that a sentencing court may rely upon its discretion to fashion the sentence it reasonably believes most appropriate. Under the regime established in *Rita* and *Gall*, it is not only permissible but indeed critical for a sentencing court to calculate a defendant's advisory range using the fact-finding tools normally available to it.

For one thing, the Guidelines continue to play an important role in the sentencing process. A district court must begin its sentencing determination by calculating the Guidelines range, and this typically requires the judge to make any number of factual determinations and judgment calls. *Rita*, 551 U.S. at 351-54. But that is only the beginning. A sentencing court is not bound by the Guidelines. *Id.* at 355. Rather, its sentencing decision must reflect an "individualized assessment based on the facts presented," an assessment that is entitled to "due deference" from any reviewing court. *Gall*, 552 U.S. at 51. As *Gall* explained, sentencing courts are "in a superior position to find facts and judge their import" for purposes of determining the most appropriate sentence for a given defendant since "[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* (citation omitted).

In short, under *Rita* and *Gall*, sentencing courts are licensed to find a host of facts and to assign weight and relevance to those findings as they reasonably see fit. In that context, it makes little sense to tie their hands artificially when it comes to the sources they can consult as they go about this discretionary task.

To be sure, a sentencing court's ability to find facts is not unlimited. Its fact-finding with respect to prior convictions is

constrained in two notable ways. First, federal sentencing proceedings are generally not the appropriate vehicle for mounting collateral attacks on the validity of prior convictions. *See Custis v. United States*, 511 U.S. 485, 497 (1994); *see also United States v. Bacon*, 94 F.3d 158, 163-64 & n.5 (4th Cir. 1996); USSG § 4A1.2, cmt (n. 6). As the *Custis* Court noted, allowing such attacks "would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States," and would "delay and impair the orderly administration of justice." *Custis*, 511 U.S. at 496-97. In this case, however, Dean does not raise such a challenge.

Second, under the "categorical approach" to assessing prior convictions, a sentencing court is to look to the legal definition of the offense rather than the factual record of the defendant's particular case to ascertain the character of the defendant's conduct. Originally developed in the context of 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), the categorical approach has been extended to the career offender provisions under the Guidelines. *See United States v. Seay*, 553 F.3d 732, 737 (4th Cir. 2009); *United States v. Diaz-Ibarra*, 522 F.3d 343, 352-53 (4th Cir. 2008). *Shepard* and *Taylor v. United States*, 495 U.S. 575 (1991), an earlier decision from which *Shepard* sprang, also imposed evidentiary restrictions on sentencing courts in connection with the categorical approach. Because of the way some offenses are defined, a simple record of conviction in some situations will be insufficient to establish whether the defendant's conduct qualifies under the categorical approach. *Shepard* and *Taylor* held that when that happens, a sentencing court may continue to attempt to determine the nature of the defendant's prior offense, but only by looking to a specified set of "conclusive records." *Shepard*, 544 U.S. at 21.

*Shepard* and *Taylor* embraced the categorical approach and those related evidentiary restrictions out of desire for the

"avoidance of collateral trials." *Shepard*, 544 U.S. at 23. Their aim was to protect sentencing courts from becoming forums in which the prosecution and defense attempt to reproduce the defendant's earlier trial. *See Taylor* 495 U.S. at 601-02. In an attempt to evoke these concerns, Dean raises the specter of "mini-trials," arguing that to allow the magistrate's orders to be used to establish his arrest date and the date he committed the offense would mire sentencing courts in complex proceedings that *Shepard* and *Taylor* sought to avoid.

This argument, however, misses the mark. As we have noted, sentencing courts find facts all the time. Even before reaching the question of whether the Guidelines recommendation is the most appropriate in a given case, a court must make a variety of factual determinations under the Guidelines. A judge calculating a Guidelines range, for instance, must determine whether a defendant was involved in criminal activity involving five or more participants or that "was otherwise extensive," and if so, must give the defendant a four-level offense-level increase if it considers him "an organizer or leader" of the activity and a three-level increase if it considers him a "manager or supervisor." *See* USSG § 3B1.1. As this example (and many others) demonstrate, simply determining the date of a particular event is hardly the most laborious sort of determination a sentencing court has to make. The questions involved in the "intervening arrest" inquiry involve discrete and objective facts rather than qualitative assessments of the sort at issue in *Shepard* and *Taylor* and in a great many Guidelines determinations. Were this a diving or a figure-skating contest, the degree of difficulty might be pegged at no more than two or three on a scale of ten.

Most importantly, what Dean overlooks is that neither the date he was arrested for a crime nor the date he committed one bears upon the nature of the conduct underlying his prior convictions. The categorical approach is a way of classifying the activity involved in prior offenses, not an across-the-board prohibition on learning any detail in some way related to a

prior conviction. This distinction is one our circuit has repeat-edly noted. In *United States v. Martinez-Melgar*, 591 F.3d 733 (4th Cir. 2010), for instance, we rejected the defendant's invocation of *Shepard* and *Taylor*, noting that those cases concerned the "substantive content of a prior conviction" rather than the existence of one. *Id.* at 739. And in *Thompson*, an ACCA case, we distinguished our earlier decision in *United States v. Washington*, 404 F.3d 834 (4th Cir. 2005), noting that the question of whether a set of offenses were committed on "separate occasions" did not entail the kind of "wide-ranging, fact-intensive findings" necessary to deter-mine whether a prior offense presented "a serious potential risk of physical injury to another" under USSG § 4B1.2(a)(2)), which had been the issue in *Washington*. *Thompson*, 421 F.3d at 286.

A policy that seeks to avoid re-litigating what the defendant did or did not do in a series of events that indisputably resulted in a criminal conviction is one thing. It seems entirely sensible to declare that one trial is enough, at least where a fairly accurate proxy for those issues is available. But when the question does not bear upon the character of the acts for which the defendant was tried, this concern does not come into play.

The scheme envisioned in *Rita* and *Gall* is one in which sentencing courts have enhanced authority and flexibility in determining sentences. Limitations like the categorical approach circumscribe their activities to an extent, but they cannot be allowed to reach beyond their legitimate bounds if sentencing discretion is to be taken seriously. To accept Dean's *Shepard* claim in this case would require us to cut back on *Booker*, *Gall*, and *Rita*. This we cannot and will not do.

### III.

Across the range of its major sentencing decisions, the Supreme Court has labored to bring a sense of balance to the

sentencing process. Common to cases like *Rita* and *Gall*, *Shepard* and *Taylor*, *Custis* and others, is a desire to facilitate sentencing—to help district courts fulfill their mission of determining the most appropriate sentence in each case before them. Part of this means removing obstacles to judicious sentencing, giving district courts discretion to find facts and exercise their judgment as they reasonably see fit. And part of this means disallowing inquiries that threaten to mire sentencing courts in complicated questions tangential to the task at hand. The point is to facilitate the sentencing process, not to sink it. For the reasons noted, the fact found by the district court in this case clearly advanced the cause of facilitation.

The district court thus did not err in consulting the records of an intervening arrest offered by the government. Those records indicated that Dean was arrested for his first drug felony before he committed his second, and Dean offered no evidence whatsoever to rebut that conclusion. The district court therefore was justified in its finding that Dean's prior offenses were separated by an intervening arrest and thus that Dean qualified for a career offender enhancement in his advisory Guidelines calculation. Accordingly, the judgment of the district court is hereby

*AFFIRMED*.