GOODWIN, Chief District Judge,
concurring in part and dissenting in part:
Although I agree with my colleagues on the motion to suppress issue, I cannot join the ex post facto aspect of the majority opinion. The majority holds that the retroactive application of a revised Sentencing Guideline range that results in a higher recommended sentence violates the Constitution’s ex post facto prohibition. In so doing, the majority ignores the reality that the Guidelines lack legal force. It also creates a constitutional contradiction by ignoring the Sixth Amendment implications of treating the Guidelines as anything more than advisory. Therefore, I respectfully dissent.
I.
“[T]he Guidelines were stripped of legal force” in United States v. Booker. United States v. Dean, 604 F.3d 169, 173 (4th Cir. May 5, 2010). Accordingly, the Constitution’s ex post facto prohibition cannot apply to them.
A.
The Ex Post Facto Clause applicable to the federal government provides, “No ... ex post facto Law shall be passed.” U.S. *204 Const, art. I, § 9, cl. 3.[1] By those terms, a provision must be or have the effect of “Law” to implicate the constitutional provision. See Stogner v. California, 539 U.S. 607, 611, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) (“[T]he Clause protects liberty by preventing governments from enacting statutes with ‘manifestly unjust and oppressive’ retroactive effects.” (quoting Calder v. Bull, 3 U.S. (3 Dall.) 386, 391, 1 L.Ed. 648 (1798)) (first emphasis added)); Cal. Dep’t of Corr. v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (“[T]he Clause is aimed at laws that ‘retroactively alter the definition of crimes or increase the punishment for criminal acts.’ ” (quoting Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)) (emphasis added)).
The Guidelines, however, are not law and do not have the effect of law. I agree with the government that the Guidelines “are not a legal framework that limits sentencing courts, but, rather simply advice for a judge’s consideration.” Br. of Appellant 13. By definition, therefore, the Guidelines cannot implicate the Ex Post Facto Clause. See United States v. Demaree, 459 F.3d 791, 795 (7th Cir.2006) (“[T]he ex post facto clause should only apply to laws and regulations that bind rather than advisef.]”).
1.
In Booker, the Supreme Court declared that, under the Sixth Amendment, “[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.” United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Consequently, the Court held that the Sixth Amendment’s “jury trial requirement is not compatible with the [Sentencing Reform] Act as written.” Id. at 248, 125 S.Ct. 738.
As a remedy, the Supreme Court “convert[ed] the Guidelines from binding law to an advisory document.” Dean, 604 F.3d at 173. Excised of their legal force, the Guidelines must be read as mere advice that recommends, rather than law that requires, that a district court impose a particular sentence. See Booker, 543 U.S. at 233, 125 S.Ct. 738 (“If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.” (emphasis added)); see also United States v. Benkahla, 530 F.3d 300, 312 (4th Cir.2008) (“Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury’s verdict.”).
But the majority fails to follow this constitutional mandate. See Ante at 200 (“[W]e are obliged to disagree with and reject the Government’s position” that the Guidelines “serve merely as ‘advice for a district court’s initial consideration.’ ” (quoting Br. of Appellant 13)). Relying upon the D.C. Circuit’s characterization of the Guidelines as an “important ‘anchor’ for a sentencing judge,” the majority necessarily concludes that the Guidelines are more of a requirement for district courts to follow than advice to be considered. Id. *205 at 202 (quoting United States v. Turner, 548 F.3d 1094, 1099 (D.C.Cir.2008)). The majority thus gives more weight to the Guidelines than the Sixth Amendment permits. Additionally, by recognizing that the Guidelines can implicate the Ex Post Facto Clause, the majority creates a constitutional contradiction: the Guidelines carry legal force under one part of the Constitution (the Ex Post Facto Clause), but not under another (the Sixth Amendment).
2.
Of course, sentencing guidelines with a binding, legal effect would compel the majority’s conclusion. In Miller v. Florida, the Supreme Court addressed the constitutionality of the revised Florida sentencing guidelines law. 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). At the time the defendant, Miller, committed the applicable offense, the Florida sentencing guidelines provided that he be sentenced to a term of 3 1/2 to 4 1/2 years in prison. The State of Florida revised its guidelines before his sentencing, however, which changed Miller’s sentencing range to between 5 1/2 and 7 years in prison. The Supreme Court held that this retroactive change was an ex post facto violation.
The Court explained that Florida’s guidelines raised ex post facto concerns because they had “the force and effect of law.” Miller, 482 U.S. at 435, 107 S.Ct. 2446. They did not “simply provide flexible ‘guideposts’ for use in the exercise of discretion,” but instead “create[d] a high hurdle that [was required to] be cleared before discretion c[ould] be exercised.” Id. For example, a sentencing judge could impose a departure sentence only after first finding “‘clear and convincing reasons’ that [were] ‘credible,’ ‘proven beyond a reasonable doubt,’ and ‘not ... a factor which has already been weighed in arriving at a presumptive sentence.’ ” Id. (quoting State v. Mischler, 488 So.2d 523, 525 (Fla.1986); Williams v. State, 492 So.2d 1308, 1309 (Fla.1986)). The mandatory character of the Florida guidelines virtually ensured that a defendant would receive a guidelines sentence. Therefore, the Court recognized, retroactively applying the Florida guidelines “directly and adversely affect[ed] the sentence” that a defendant would receive. Id.
Unlike the state guidelines in Miller, however, the post-Booker federal Guidelines do not carry the force and effect of law. They do not pose a “high hurdle” to the exercise of sentencing court discretion. They are, rather, “flexible guideposts” for the exercise of the sentencing court’s discretion within the bounds of reason. Once a court has “considered” the Guidelines, it possesses complete discretion over the sentence imposed. See Demaree, 459 F.3d at 795 (concluding that a sentencing judge’s “freedom to impose a reasonable sentence outside the [guideline] range is unfettered”). Finally, because they are advisory, retroactively applying post-Boolcer Guidelines cannot directly and adversely affect the sentence that a defendant will receive.
B.
The Supreme Court has explained, “Critical to relief under the Ex Post Facto Clause is not an individual’s right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.” Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). At the time the Constitution was written, a chief objection to ex post facto laws was that they provided no notice to the public. Blackstone remarked that lawmaking must be done “in the most public and perspicuous manner; not like Caligula, who (ac *206 cording to Dio Cassius), [had] written] his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people.” William Blackstone, 1 Commentaries *46. “All laws,” Blackstone wrote, “should be therefore made to commence in futuro, and be notified before their commencement....” Id.
But the Supreme Court has concluded that the post -Booker Guidelines cannot present notice problems. In Irizarry v. United States, the Court addressed whether, after Booker, Federal Rule of Criminal Procedure 32(h) applies to every sentence that varied from the Guideline range.[2] 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). The Court concluded that it does not, explaining,
Now faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of “expectancy” that gave rise to a special need for notice.... Indeed, a sentence outside the Guidelines carries no presumption of unreasonableness.
Id. at 2202.
Irizarry’s holding is relevant here. Neither Lewis nor any defendant can make constitutional complaint when his advisory Guidelines range is changed, because he has no rightful expectation to a within-Guidelines sentence. His only expectation is that he will be sentenced within the provided statutory range. Therefore, the Guidelines do not present the notice problem that ex post facto laws necessarily present.[3]
II.
Furthermore, I disagree with the arguments relied upon by the majority in concluding that the advisory Guidelines implicate the Ex Post Facto Clause. The majority builds its case on language that merely describes the remnants of the Guidelines regime. They then conclude that sentencing courts remain somehow bound to the Guidelines, simply because the Guidelines must be consulted and correctly calculated. Finally, the majority uses statistics to reach an unwarranted conclusion.
A.
First, the majority emphasizes that the Supreme Court has labeled the Guidelines as the “starting point” and “initial benchmark” in sentencing proceedings. Ante at 199. Contrary to the majority’s characterization, however, I believe this language was not intended to leave the Guidelines with any residual legal effect. Indeed, this Court has observed that “consideration of the Guidelines ... is only ‘the starting point and initial benchmark’” at sentencing. United States v. Raby, 575 F.3d 376, 381 (4th Cir.2009) (emphasis added); see also Booker, 543 U.S. at 245-46, 125 S.Ct. *207 738 (explaining that after a proper Guideline calculation, sentencing courts are “permitted]” to “tailor the sentence in light of other statutory concerns”); Gall v. United States, 552 U.S. 38, 50 n. 6, 128 S.Ct. 586, 169 L.Ed.2d 445 (noting that courts must “consider” the Guidelines at sentencing). Moreover, sentencing courts may even completely disregard certain advice offered by the Guidelines based solely on policy grounds. Kimbrough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); United States v. Morace, 594 F.3d 340, 349 (4th Cir.2010).
B.
Second, the majority inappropriately gives weight to the fact that a sentencing court’s failure to correctly calculate the Guideline range is reversible error. See Ante at 200-01. Of course, the applicable Guidelines range must be correctly calculated. But ensuring that sentencing courts correctly calculate the advisory Guidelines range simply ensures that the “advice” rendered by the Guidelines is correct. Courts must still take into account many other factors to arrive at a proper sentence for an individual defendant.
For example, Judge Wilkinson recently explained the importance of a sentencing court’s consideration of matters other than the Guideline range:
A district court must begin its sentencing determination by calculating the Guidelines range, and this typically requires the judge to make any number of factual determinations and judgment calls. Rita [v. United States], 551 U.S. [338,] 351-54, 127 S.Ct. 2456, 168 L.Ed.2d 203 [(2007) ]. But that is only the beginning. A sentencing court is not bound by the Guidelines. Id. at 355, 127 S.Ct. 2456. Rather, its sentencing decision must reflect an “individualized assessment based on the facts presented,” an assessment that is entitled to “due deference” from any reviewing court. Gall, 552 U.S. at 51, 128 S.Ct. 586. As Gall explained, sentencing courts are “in a superior position to find facts and judge their import” for purposes of determining the most appropriate sentence for a given defendant since “[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.” Id. (citation omitted).
Dean, 604 F.3d at 175-76. Requiring sentencing courts to properly calculate the advisory range does not give the Guidelines the force and effect of law necessary for an ex post facto violation.
C.
Third, the majority concludes that the Guidelines implicate the Ex Post Facto Clause, in part, because appellate courts may presume a within-Guidelines sentence to be reasonable. Ante at 201 (citing Raby, 575 F.3d at 381). I respectfully submit that the majority misses the point. This presumption is not due to the legal force of the Guidelines. Appellate courts are entitled to presume that a within-Guidelines sentence is reasonable only because a within-Guidelines sentence has already received double consideration:
[B]y the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.
Rita, 551 U.S. at 347, 127 S.Ct. 2456. Rita further explains that the appellate presumption, “rather than having independent legal effect, simply recognizes the real- *208 world circumstance that when the judge’s discretionary decision accords with the Commission’s view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.” Id. at 350, 127 S.Ct. 2456. Furthermore, although an appellate court may presume a sentence is reasonable if it is within the Guideline range, a sentencing court is forbidden from doing so. See Nelson v. United States, — U.S. -, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009); Raby, 575 F.3d at 381. The appellate court presumption, therefore, does not logically lead to the conclusion that sentencing courts are or should feel compelled to stay within the advisory Guidelines range.[4]
D.
Finally, the majority relies on Sentencing Commission statistics to show that the “practical effect” of the Guidelines is that most sentences fall within the appropriate Guideline ranges, even after Booker. Ante at 201-02. The majority recites the statistic that 81.9 percent of sentences imposed in the Fourth Circuit in fiscal year 2009 fell within the advisory Guideline range or a government-sponsored departure below that range. Id. I find these statistics unpersuasive and irrelevant.[5]
The majority does not sufficiently explain what these statistics mean or, more importantly, why the courts sentenced within the Guideline ranges. These statisties are not proof that courts sentenced within the Guidelines because they felt compelled to do so, feared reversal on appeal, or shied away from providing more in-depth explanation of a variant sentence. Indeed, such an adherence to the Guidelines would itself be reversible error. See, e.g., Raby, 575 F.3d at 382 (reversing district court sentence because the court “seemed to feel constrained to impose a sentence within the Guidelines range”).
The only permissible conclusion to be drawn from these statistics is that the district courts frequently agree with the Sentencing Commission’s advice on the proper sentence for the defendants before them. As Rita explains,
The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill its statutory mandate. They also reflect that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment.
551 U.S. at 349, 127 S.Ct. 2456. To read anything else into the statistics would be pure speculation, and speculation is not a sufficient basis for an important constitutional conclusion.
III.
After Booker, the Guidelines are advisory and lack legal force. They cannot, *209 therefore, be an ex post facto “Law.” I would affirm Lewis’s conviction, vacate his sentence, and remand for resentencing using the 2008 Guidelines Manual.

. The Constitution contains two provisions prohibiting ex post facto laws. The provision applicable to the federal government is in Article I, section 9. The provision that applies to the States is in Article I, section 10.

. Federal Rule of Criminal Procedure 32(h) provides, "Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party’s prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.” The rule was enacted in response to Burns v. United States, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

. Moreover, the courts of appeals have unanimously held that the retroactive application of the Booker remedy does not violate the Ex Post Facto Clause, because the defendants were on notice of the maximum statutory penalty when they committed their respective crimes. See, e.g., United States v. Davenport, 445 F.3d 366, 369-70 (4th Cir.2006) (collecting cases), abrogated on other grounds by Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008).

. The majority also mentions that "the standard of review we utilize in sentencing appeals emphasizes the importance of the advisory Guidelines.” Ante at 201. This argument is also overstated, as all sentences, "whether inside, just outside, or significantly outside the Guidelines range,” are reviewed under "a deferential abuse-of-discretion standard” on appeal. Gall, 552 U.S. at 41, 128 S.Ct. 586.

. Citing statistics showing that district courts tend to sentence within the Guidelines in order to show that district courts impose particular sentences because of the Guidelines is a false-cause logical fallacy (“ex post ergo propter hoc”). The Sentencing Commission derived Guidelines ranges from, among other things, empirical study of thousands of actual sentences imposed by district courts. U.S. Sentencing Guidelines Manual ch. 1, pt. A (2009). Therefore, it is illogical to assume that district courts feel bound by the Guidelines simply because district courts happen to sentence within the Guidelines.