**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4937**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONAVON DEWAYNE CRAWFORD,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., Chief District Judge.  (1:12-cr-00039-WO-1)

Argued:  December 12, 2013          Decided:  January 24, 2014

Before MOTZ, KEENAN, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John David Bryson, WYATT, EARLY, HARRIS & WHEELER, LLP, High Point, North Carolina, for Appellant.  Clifton Thomas Barrett, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The instant case requires us to consider two issues: whether the district court erred by either (1) denying Appellant Donavon Dewayne Crawford's ("Appellant") motion to suppress; or (2) determining Appellant was a career offender at sentencing.

Because there was a substantial basis for determining the existence of probable cause under the circumstances described in the search warrant application affidavit, we conclude there was a sufficient showing of probable case. And, per the plain language of section 4A1.2(a)(2) of the 2011 United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), it is readily apparent that Appellant was arrested for the acts underlying his first felony conviction before he was arrested for the acts underlying his second felony conviction. Hence, due to this intervening arrest, both offenses are appropriately counted toward his career offender status.[1] Therefore, we conclude the district court properly denied Appellant's motion to suppress and properly determined Appellant qualified for a career offender sentence enhancement. Accordingly, we affirm.

---

[1] Because Crawford received separate sentences for these two offenses under North Carolina law, the distinction we recently made in United States v. Davis, 720 F.3d 215 (4th Cir. 2013), does not apply.

2

I.

A.

On August 10, 2011, Investigator J.C. Husketh ("Investigator Husketh"), an officer with the Durham Police Department in Durham, North Carolina, applied for a warrant to search for controlled substances and items related to the distribution of controlled substances at Appellant's residence on Davinci Street in Durham, North Carolina. In the warrant application affidavit, Investigator Husketh averred that he had, at some earlier point in time, received a complaint from Sgt. M. Massey, an officer with the Person County Sheriff's Department in neighboring Person County, North Carolina, that Appellant "was selling large amounts of cocaine and marijuana, and had in his possession several firearms." J.A. 20, Aff. ¶ 5.[2] The affidavit further stated,

> [Appellant] was at his residence when members of the Durham Police Department conducted a Knock and Talk at his residence at 1023 Davinci Street, Durham NC 27704. Sgt. M. Massey advised that [Appellant] proceeded to stash a large amount of crack cocaine and marijuana inside the air vents inside the residence. [Appellant] also stored at least two firearms inside the same vents. Members of the Durham Police Department conducted the Knock and Talk at the residence but were unaware of the information from Sgt. M. Massey. The

---

[2] Citations to the Joint Appendix ("J.A.") refer to the Joint Appendix filed by the parties in this appeal.

3

officers left the residence without locating the controlled substance [sic] or illegal firearms.

J.A. 20, Aff. ¶ 5. Investigator Husketh's affidavit also asserted,

> On August 9, 2011[,] Investigators from the Special Operation Division attempted to conduct a Knock and Talk at the residence at 1023 Davinci Street, Durham NC 27704. When Investigator Husketh approached the front door[,] he noticed bullet holes in the front side of the residence. The damage appeared to be old but Officers know these signs to be common in gang and drug areas.

J.A. 20, Aff. ¶ 8. Investigator Husketh next averred,

> While at the residence[,] Investigator Husketh noticed the trash to the residence was sitting at the curb waiting for City Trash Pickup. Investigator Husketh conducted a trash pull and located multiple torn plastic baggies. These items are known to officers as drug paraphernalia and are commonly found at drug houses. One of the plastic baggies that Investigator Husketh located inside the trashcan of 1023 Davinci Street contained crack cocaine. Investigator Husketh also located U.S. Mail that was addressed to . . . [Appellant's] mother, according to his arrest report. The same arrest report identified 1023 Davinci Street as his address.[3]

J.A. 20, Aff. ¶ 9.

Based on Investigator Husketh's warrant application affidavit, a state magistrate judge authorized the search

---

[3] There was no date given for the trash pull.

4

warrant. When officers searched Appellant's Davinci Street residence pursuant to the warrant, they found crack cocaine, marijuana, three prescription pills, $632 total in cash, two firearms, ammunition, and drug paraphernalia. Some of the contraband was located in the air vents.

Based on the results of this search, officers with the Durham Police Department obtained and executed a second search warrant on October 13, 2011, this time at an apartment that Appellant maintained with his girlfriend on North Maple Street, Durham, North Carolina. As officers made entry into a bedroom of the residence, they identified Appellant in a bed with his girlfriend and their two-year-old son. A sheet was covering all three individuals. As officers removed the sheet, they immediately seized a firearm from Appellant, which he had concealed under the sheet.

## B.

On February 27, 2012, a federal grand jury in the Middle District of North Carolina indicted Appellant on eight drug and firearm offenses. Appellant moved the district court to suppress the drugs and firearms obtained during the August 10, 2011 search of his Davinci Street residence, contending the affidavit supporting the search warrant did not establish the requisite probable cause. Specifically, Appellant argued that the affidavit, which contained undated descriptions of several

5

events, did not support a finding of probable cause because it was subject to multiple interpretations regarding the timing of events leading the officers to seek a search warrant. Appellant also challenged the basis of the information contained in the affidavit because it relied on statements made by another law enforcement officer (Sgt. Massey) who did not reveal his source.

The district court acknowledged that the chain of events detailed in the Davinci Street affidavit could be interpreted in different ways, but ultimately denied Appellant's motion to suppress. Based on the totality of the circumstances, the district court concluded the affidavit established probable cause. The district court found that the contents of the trash, which included drug paraphernalia, cocaine base, and mail addressed to Appellant's mother, corroborated Sgt. Massey's tip. Additionally, the district court determined that, even if the affidavit did not establish probable cause, the good faith exception to the warrant requirement applied.

Subsequently, Appellant entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), reserving his right to appeal the district court's denial of his motion to suppress. Appellant pled guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 924(c)(1)(A)(i); and two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

C.

Before sentencing, the United States Probation Office completed a Presentence Investigation Report ("PSR"). The PSR determined that Appellant had two prior state felony convictions for assault inflicting serious bodily injury and second degree kidnapping. As such, it recommended that Appellant be designated as a career offender pursuant to U.S.S.G. § 4B1.1 (2011). A career offender designation has three requirements: "(1) the defendant was at least eighteen years old at the time" the instant offense was committed; (2) the instant felony offense "is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Pursuant to U.S.S.G. § 4B1.2(c), a defendant has "two prior felony convictions" if the convictions were sustained before committing the instant offense and "the sentences for at least two of the aforementioned felony convictions are counted separately." Id. § 4B1.2(c). "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . ." Id. § 4A1.2(a)(2). But see

7

<u>Davis</u>, 720 F.3d at 219 (holding that if the defendant received a consolidated sentence for two prior offenses, "the existence of an intervening arrest is irrelevant"). Appellant objected to his designation as a career offender because, according to Appellant, there was no intervening arrest between his two prior felony offenses.

The underlying events of Appellant's predicate convictions, which the parties do not dispute, are as follows:

- On January 20, 2009, Appellant was arrested for misdemeanor assault on a female for striking his girlfriend in the face and breaking her jaw on January 13, 2009. Appellant posted bond the day after his arrest.

- On February 9, 2009, Appellant kidnapped his girlfriend, struck her in the face, and slammed her to the ground. As a result, on February 10, 2009, Appellant was again arrested and charged with felony assault inflicting serious bodily injury, felony assault with a deadly weapon with intent to kill, felony assault with a deadly weapon, misdemeanor assault on a female, and felony first degree kidnapping.

- On April 6, 2009, Appellant was indicted on a charge of felony assault inflicting serious bodily injury based on the conduct underlying his January 20, 2009, arrest. Appellant was not rearrested after the indictment was returned.

- On April 15, 2010, Appellant pled guilty to two counts of felony assault inflicting bodily injury and one count of felonious second degree kidnapping as a result of the January 20, 2009, and February 10, 2009, arrests.[4]

---

[4] On the same day, Appellant also pled guilty to misdemeanor assault on a female for conduct underlying his February 10, 2009 (Continued)

8

Although Appellant's separate cases from January 20, 2009, and February 10, 2009, were consolidated for sentencing on the same day, April 15, 2010, he did not receive a consolidated sentence or consolidated judgment. Appellant's convictions remained separate cases with separate case numbers, and he received separate sentences for each conviction to run concurrently.[5]

Appellant based his objection to his designation as a career offender on the fact that his arrest on January 20, 2009, was for a misdemeanor assault, and he was not indicted for

arrest. Additionally, Appellant pled guilty to felony obstructing justice and felony intimidating a witness. On February 10, 2009, through March 23, 2009, Appellant intimidated his girlfriend, a witness against him, telling her to provide fictitious information to the prosecutor assigned to his case. He was charged with this conduct on April 17, 2009.

[5] For his felony conviction of assault inflicting serious bodily injury stemming from the conduct underlying his January 20, 2009 arrest, Appellant was sentenced to 19 to 23 months imprisonment, suspended, and 36 months supervised probation, with the first six months served in incarceration. Following the revocation of his probation, this judgment was modified to six months house arrest and six months intensive supervision. For the conduct underlying his February 10, 2009 arrest, Appellant was convicted of (1) both felony assault inflicting serious bodily injury and misdemeanor assault, for which he received a combined sentence of 24 to 29 months imprisonment, suspended, and 36 months supervised probation; as well as (2) felony second degree kidnapping, for which he received a sentence of 36 to 53 months imprisonment, suspended, and 36 months probation. Again, following the revocation of his probation, this judgment was modified to six months house arrest and six months intensive supervision.

felony assault until April 6, 2009 -- after his February 2009 arrest for felony offenses. Thus, Appellant argued, there was no intervening arrest and the offenses could not be counted separately because the sentences were imposed on the same day. The district court overruled Appellant's objection, determining that the offenses upon which the designation was based were, in fact, separated by an intervening arrest under the plain language of the Sentencing Guidelines.

Applying the career offender Sentencing Guidelines, the district court determined that Appellant's sentencing range was 262 to 327 months imprisonment and sentenced Appellant to 262 months imprisonment.

## II.

We initially consider the applicable standards of review. First, when reviewing the district court's denial of Appellant's motion to suppress, we review factual findings for clear error and legal conclusions de novo. See United States v. McGee, 736 F.3d 263, 269 (4th Cir. 2013) (citations omitted). When, as here, "the district court denies a motion to suppress, we view the evidence in the light most favorable to the government." Id.

Likewise, in assessing whether the district court has properly classified Appellant as a career offender, "we review the district court's legal conclusions de novo and its factual

findings for clear error." United States v. Manigan, 592 F.3d 621, 626 (4th Cir. 2010) (internal quotations omitted).

III.

A.

Appellant argues the search warrant application affidavit filed by Investigator Husketh was insufficient to supply probable cause to search because it relied on conclusory assertions and was written in such a manner as to be open to several different interpretations. We disagree.

While there are exceptions, "in the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless . . . accomplished pursuant to a judicial warrant, issued by a neutral magistrate after finding probable cause." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (internal quotations omitted). As recognized by the Supreme Court, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts." Illinois v. Gates, 462 U.S. 213, 232 (1983). The standard of probable cause requires "only the probability, and not a prima facie showing, of criminal activity" under the totality of the circumstances. Id. at 235 (internal quotations omitted).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set

11

> forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Id. at 238 (internal quotations omitted).

Appellant's argument disregards our deferential approach to the magistrate's assessment of the facts presented in the affidavit. As the reviewing court, "we must accord 'great deference' to the magistrate's assessment of the facts presented to him." United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (quoting United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)). Our inquiry is therefore limited "to whether there was a 'substantial basis for determining the existence of probable cause.'" Id. (quoting Gates, 462 U.S. at 239).

As a practical matter, "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." Gates, 462 U.S. at 235 (internal quotations omitted). Probable cause to justify a warrant may be established from any reliable source. "But to require that the affiant amass every piece of conceivable evidence before seeking a warrant is to misunderstand the burden of probable cause."

12

Montieth, 662 F.3d at 665 (citations omitted).  Further, "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."  United States v. Ventresca, 380 U.S. 102, 111 (1965); see also United States v. Hodge, 354 F.3d 305, 311 n.1 (4th Cir. 2004) (stating, in reviewing a search warrant application affidavit, "statements of other law enforcement officers 'are plainly . . . reliable' even without any special showing." (quoting Ventresca, 380 U.S. at 111)).

When viewed through the requisite deferential lens, we conclude there was a substantial basis for determining the existence of probable cause under the circumstances described in the affidavit here.  A common-sense reading of the affidavit leads to a determination that, based on the totality of the circumstances, the magistrate fairly concluded there was a reasonable probability that contraband would be found in Appellant's Davinci Street residence.  First, the affidavit contained information from Sgt. Massey that Appellant was "selling large amounts of cocaine and marijuana, and had in his possession several firearms."  J.A. 19, Aff. ¶ 5.  Second, the affidavit indicated that investigators attempted to corroborate this information by conducting at least one knock and talk on August 9, 2011, where Investigator Husketh discovered "bullet

13

holes on the front side of the residence" commonly seen in "gang and drug areas." J.A. 20, Aff. ¶ 8. Third, the affidavit described a trash pull conducted by Investigator Husketh where he found "multiple torn plastic baggies," one of which "contained crack cocaine." J.A. 20, Aff. ¶ 9. Finally, the mail found in the trash, i.e., the mail addressed to Appellant's mother, established a nexus with the location to be searched. Therefore, the affidavit was constitutionally sufficient and provided substantial support for the common-sense conclusion drawn by the magistrate.[6]

B.

Appellant next contends the district court erred in designating him as a career offender because the two offenses upon which the court relied for the designation should not have been counted as two separate prior felony convictions. Again, we disagree.

Under the Sentencing Guidelines, a defendant is designated a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a

---

[6] Because we conclude that probable cause existed based on the totality of the circumstances in this instance, it is unnecessary to address the applicability of the good faith exception. See United States v. Leon, 468 U.S. 897 (1984).

> felony that is either a crime of violence or a controlled substance offense; and (3) <u>the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.</u>

U.S.S.G. § 4B1.1(a) (emphasis supplied). The Sentencing Guidelines further illuminate the phrase "two prior felony convictions" as "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . ., and (2) <u>the sentences for at least two of the aforementioned felony convictions are counted separately</u>" in the defendant's Criminal History Category. <u>Id.</u> § 4B1.2(c) (emphasis supplied).

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2). Therefore, when a court has imposed sentences for multiple offenses on the same day, in order to

count as separate qualifying offenses, they must have been "separated by an intervening arrest," meaning that "the defendant [was] arrested for the first offense prior to committing the second offense." Id. § 4A1.2(a)(2).

Appellant argues there was no intervening arrest between the two qualifying offenses in this case because, while he was ultimately convicted of felony assault based on his January 20, 2009 misdemeanor arrest, he was not charged with a felony for that offense until April 6, 2009, which was after his February 10, 2009 arrest, and he was not rearrested following the April 6, 2009 felony indictment. Appellant's argument is basically one of semantics. He urges that even though he was ultimately charged and convicted of a felony, because his initial arrest was based on a misdemeanor charge at the time of arrest, it should not count for the purpose of the career offender calculus.

Although we have not addressed this precise issue,[7] our analysis need go no further than the plain language of the

---

[7] Appellant points this court to United States v. Dean, 604 F.3d 169 (4th Cir. 2010); however, that case is not instructive on the precise issue before us. While the defendant in Dean also challenged his career offender designation on the basis that he sustained no intervening arrest between his predicate offenses, our focus in Dean was instead directed toward the propriety of the district court's reliance on certain documents in determining the dates of the arrests. See id. at 171.

16

Sentencing Guidelines provision itself.  Under a plain reading of U.S.S.G. § 4A1.2(a)(2), whether or not an intervening arrest has occurred is solely a matter of timing; offenses are separated by an intervening arrest occur when "the defendant is arrested for the first offense prior to committing the second offense."  (emphasis supplied).  Nothing in the plain language of the Sentencing Guidelines gives any weight to the nature of the crime with which the defendant is initially charged.  This comports with a common-sense interpretation of the definition of an "intervening arrest" because, as a practical matter, the nature and scope of charges often change between the time an individual is initially arrested and the point at which a full investigation is conducted and the individual is formally charged.  See United States v. Coleman, 38 F.3d 856, 860 (7th Cir. 1994) ("Once arrested, the defendant was 'arrested' for all charges that might have been filed relating to his conduct.  When looking for an intervening arrest [under the Guidelines], we concentrate on the defendant's conduct.").

Here, it is readily apparent that Appellant committed the acts underlying the felony assault conviction (January 20, 2009) before he committed the acts underlying the second degree kidnapping conviction (February 10, 2009).  Appellant received separate sentences for these convictions.  Hence, both offenses

17

should be separately counted as prior sentences under U.S.S.G. § 4A1.2(a)(2) and qualifying offenses under U.S.S.G. § 4B1.1(a).

IV.

Pursuant to the foregoing, the district court's denial of Appellant's motion to suppress and designation of Appellant as a career offender are

AFFIRMED.